**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

---

KEYSE G. JAMA,

Petitioner,

v.

IMMIGRATION AND NATURALIZATION SERVICE,

Respondent.

Civil No. 01-1172 (JRT/AJB)

**MEMORANDUM OPINION AND ORDER ADOPTING THE REPORT AND RECOMMENDATION OF THE MAGISTRATE JUDGE**

---

Jeffrey J. Keyes and Kevin M. Magnuson, BRIGGS AND MORGAN, 2400 IDS Center, 80 South Eighth Street, Minneapolis, MN, 55402, for petitioner.

Lonnie F. Bryan, Assistant United States Attorney, OFFICE OF THE UNITED STATES ATTORNEY, 600 United States Courthouse, 300 South Fourth Street, Minneapolis, MN 55415; Christine A. Bither and Greg D. Mack, Office of Immigration Litigation, UNITED STATES DEPARTMENT OF JUSTICE, Civil Division, 1331 Pennsylvania Avenue, NW, Room 700S, Washington D.C., 20530, for respondent.

Petitioner Keyse Jama filed a petition for a writ of habeas corpus, seeking an order that would bar the United States Immigration and Naturalization Service ("INS") from removing him to Somalia. He claims that the INS cannot legally deport him to Somalia because Somalia has not agreed to accept him. The INS responded by filing a motion to dismiss on the basis that 8 U.S.C. § 1252(g) deprives the Court of jurisdiction over petitioner's claim. Even assuming the Court has jurisdiction, according to the INS,

FILED MAR 3 1 2002
RICHARD D. SLETTEN, CLERK
JUDGMENT ENTD. ______
DEPUTY CLERK ______

petitioner can be legally removed to Somalia even though there has been no indication that he will be accepted there.

On February 1, 2002, United States Magistrate Judge Arthur J. Boylan concluded that § 1252(g) does not deprive a federal court of habeas jurisdiction under 28 U.S.C. § 2241. Reaching the merits of petitioner's claim, the Magistrate Judge concluded that petitioner cannot be removed to a country unless the governmental authority in that country agrees to accept him. Accordingly, he recommended to the Court that petitioner's application for a writ of habeas corpus be granted and that the INS be ordered not to remove petitioner from the United States until the government of the country to which he is to be removed has agreed to accept him. This matter is now before the Court on the objections of the INS to the report and recommendation.

The Court has conducted a *de novo* review of petitioner's objections pursuant to 28 U.S.C. § 636(b)(1)(C) and D. Minn. L.R. 72.1(c)(2). For the reasons set forth below, the Court overrules the government's objections, adopts the report and recommendation of the Magistrate Judge, and orders the INS not to remove petitioner from the United States.

## BACKGROUND

The facts of the case are undisputed. Petitioner was born in Somalia in 1979. In 1991, he and his family went to Kenya to escape inter-tribal warfare in their homeland. After living in Kenya for several years, petitioner and his family applied for admission to the United States as refugees. Their application was granted and petitioner arrived in the United States in February 1996 and later came to Minnesota. Petitioner settled in the

Twin Cities area, where he worked and attended school. He never became a United States citizen or permanent resident alien, but simply retained his refugee status.

In June 1999, petitioner fought with another man. The man suffered a substantial injury, and petitioner was charged with assault. In September 1999, petitioner pled guilty to third degree assault—a felony under Minnesota law—and was sentenced to one year and one day in prison. His prison sentence was stayed and he was placed on probation for three years. Because he violated the conditions of his probation, he served time in state prison.

The INS then initiated removal proceedings against petitioner as a result of his felony conviction and he was taken into INS custody after completion of his state prison term in June 2000.[1] Petitioner attempted to avoid removal by filing an application for asylum, claiming that he would be persecuted if he returned to Somalia. He also filed a separate application for relief under the United Nations Convention Against Torture and filed an application for permanent resident alien status. In August 2000, an immigration judge conducted a hearing to determine whether petitioner should be removed from the United States. The immigration judge held that petitioner was removable because he had been convicted of a "crime of moral turpitude." He also rejected petitioner's applications for asylum and permanent resident legal status. Petitioner did not request that he be sent to any particular country, therefore, the immigration judge directed the INS to remove

[1] Petitioner has been held in INS custody at all times since then. The INS detained petitioner for several months at the Minnesota Correctional Facility in Rush City, Minnesota and he was being detained at the Sherburne County Jail in Elk River, Minnesota at the time he filed his habeas petition. It is not clear whether petitioner is still in custody in Sherburne County or whether he has been transferred to some other detention facility.

him to his homeland—Somalia. The immigration judge's decision was affirmed on appeal to the Board of Immigration Appeals ("BIA"). On May 25, 2001, the INS formally notified petitioner that the removal order would be executed.

Petitioner filed the current petition for habeas relief on June 28, 2001. Petitioner is not challenging the validity of his removal order nor is he challenging his current INS detention *per se*. Instead, petitioner is challenging the manner in which the INS plans to execute the removal order. More specifically, petitioner claims that the INS should not be allowed to physically transport him to Somalia and drop him off there, unless and until some proper governmental authority in Somalia has agreed to accept him.

The INS concedes that Somalia has been without a functioning central government since 1991. However, the INS claims that 8 U.S.C. § 1231(b)(2)(E)(iv) does not require consent before sending petitioner back to Somalia, the country where he was born. The Magistrate Judge disagreed with that argument, concluding that both the statutory language and relevant caselaw require that acceptance from a proper governmental authority be obtained before petitioner can be removed.

**DISCUSSION**

The INS objects to the report and recommendation of the Magistrate Judge, claiming that the Court lacks jurisdiction under 8 U.S.C. § 1252(g), the report and recommendation misconstrues the relevant statute, 8 U.S.C. § 1231(b)(2), and the habeas petition presents a nonjusticiable political question. The Court addresses each argument in turn.

## I. Jurisdiction

The INS first argues that the Magistrate Judge erred in finding that the Court has habeas jurisdiction to review petitioner's claim. According to the INS, both the plain language of § 1252(g)[2] and the Supreme Court's decision in *Reno v. American-Arab Anti-Discrimination Comm.*, 525 U.S. 471 (1999) ("*AADC*") clearly foreclose any judicial review of the Attorney General's decision to execute petitioner's removal order. The INS also contends that petitioner's claim fails to present habeas issues because petitioner is not challenging the legality of his detention or seeking release from custody. Rather, the Magistrate Judge recommends that injunctive relief be entered against the Attorney General which, the INS contends, is not the function of a habeas petition. For the reasons that follow, the Court rejects both of the INS's arguments.

First, the Magistrate Judge properly relied on *INS v. St. Cyr*, 121 S. Ct. 2271 (2001), to conclude that § 1252(g) does not bar petitioner from seeking habeas corpus relief under § 2241. In *St. Cyr,* the Supreme Court held that the Antiterrorism and Effective Death Penalty Act ("AEDPA") and the Illegal Immigration Reform and Immigrant Responsibility Act ("IIRIRA") did not eliminate federal habeas review under § 2241. *Id* at 2287. Although *St. Cyr* did not directly address § 1252(g), *id.* at 2285 n.34,

---

[2] 8 U.S.C. § 1252(g) provides:

> Exclusive Jurisdiction.
>
> Except as provided in this section and notwithstanding any other provision of law, no court shall have jurisdiction to hear any cause or claim by or on behalf of any alien arising from the decision or action by the Attorney General to commence proceedings, adjudicate cases, or execute removal orders against any alien under this Act.

the Court agrees with the Magistrate Judge that the same principles applied by the Court in *St. Cyr* apply with equal force here. As with the three IIRIRA sections reviewed in *St. Cyr,* § 1252(g) does not expressly mention habeas or § 2241 and it should not be understood to eliminate such review by implication. Moreover, serious constitutional problems would arise if § 1252(g) were interpreted to foreclose habeas review. *Id.* at 2282 ("a serious Suspension Clause issue would be presented if we were to accept the INS's submission that the 1996 statutes have withdrawn that power [to issue the writ of habeas corpus] from federal judges and provided no adequate substitute for its exercise").

The Supreme Court's decision in *AADC* does not dictate a different result. In *AADC*, the Supreme Court held that § 1252(g) deprives federal courts of jurisdiction over actions challenging three discrete actions or decisions of the Attorney General, including decisions relating to the execution of removal orders. 525 U.S. at 492. But as petitioner argued below and as the Magistrate Judge and this Court agree, *AADC* is not a habeas case. Consequently, *St. Cyr*, not *AADC,* governs the resolution of this issue and compels the conclusion that the Court may properly entertain petitioner's habeas claim. *Carranza v. INS*, No. 00-2365, 2002 WL 47139 at *6 (1st Cir. Jan. 17, 2002) ("In light of *St. Cyr,* INS's principal argument—that section 1252(g) forecloses the exercise of habeas jurisdiction over cases in which an alien challenges his imminent deportation—is a dead letter."); *Gerbier v. Holmes,* 280 F.3d 297, 302 (3d Cir. 2002) (district court has habeas jurisdiction in light of *St. Cyr*).

The Court also finds that the remedy under the federal habeas laws is broad enough and flexible enough to provide the relief sought in this case. In *St. Cyr,* for

instance, the habeas petitioner was not seeking release from custody *per se* but rather was seeking an order compelling the INS to consider whether he should be granted a discretionary waiver of removal. 121 S. Ct. at 2278. In granting the habeas petition, the Supreme Court did not release the petitioner from custody. Rather, it merely directed the INS to consider whether petitioner should be granted a waiver. Likewise, in *Martin v. Gerlinski,* 133 F.3d 1076 (8th Cir. 1998), the Eighth Circuit granted habeas relief in the form of an order directing the Federal Bureau of Prisons to consider whether petitioner should be allowed early release under 18 U.S.C. § 3621(e)(2)(B). *Id.* at 1081. *See also Goncalves v. Reno,* 144 F.3d 110, 122 (1st Cir. 1998) (granting writ of habeas corpus ordering availability of discretionary relief in deportation proceedings); *Henderson v. INS,* 157 F.3d 106, 117-22 (2d Cir. 1998).

Moreover, petitioner here raises a pure question of law—whether it is legal for the INS to leave petitioner in Somalia without first obtaining some type of acceptance from a Somali governmental authority. As the Supreme Court noted in *St. Cyr,* habeas proceedings are routinely used to answer such purely legal issues. 121 S. Ct. at 2283 ("In case after case, courts answered questions of law in habeas corpus proceedings brought by aliens challenging Executive interpretations of the immigration laws."); *Henderson,* 157 F.3d at 119 n.9 (habeas jurisdiction extends to review of the Attorney General's "interpretation of the immigration laws"). Indeed, as discussed above, "a construction of [§ 1252(g)] that would entirely preclude review of a pure question of law by any court would give rise to substantial constitutional questions." *St. Cyr,* 121 S. Ct. at 2279.

For the foregoing reasons, the Court adopts the Magistrate Judge's conclusion that "[§ 1252(g)] does not bar federal courts from entertaining habeas corpus petitions brought by criminal aliens who are attempting to challenge removal proceedings on legal or constitutional grounds." Report and Recommendation at 12. Accordingly, the government's motion to dismiss for lack of jurisdiction is denied.

## II. Merits of Petitioner's Claim

The INS next argues that the report and recommendation's conclusion that 8 U.S.C. § 1231(b)(2)(E)(iv) requires some unspecified consent from Somalia prior to removal that Somalia is willing to accept petitioner is erroneous and contradicts the plain language of the statute. According to the INS, subclauses (i) through (vi) of § 1231(b)(2)(E) do not require that the receiving country be willing to accept the alien.

Section 1231(b)(2) establishes a three-step process for determining where a removable alien should be sent after a final removal order has been entered against him. In the first step, the alien may designate a country to which he wants to be sent. 8 U.S.C. § 1231(b)(2)(A). This request will be granted unless, for instance, the government of the country designated by the alien is not willing to accept him into the country. *Id.* § 1231(b)(2)(B) and (C). If the process cannot be completed at step one, the INS at step two is directed to send the alien to the country of which he is a citizen—provided that the country is willing to accept him. The statute reads as follows:

> If an alien is not removed to a country designated under subparagraph (A)(i), the Attorney General shall remove the alien to a country of which the alien is a subject, national, or citizen unless the government of the country—

> (i) does not inform the Attorney General or the alien finally, within 30 days after the date the Attorney General first inquires or within another period of time the Attorney General decides is reasonable, whether the government will accept the alien into the country; or
>
> (ii) is not willing to accept the alien into the country.

8 U.S.C. § 1231(b)(2)(D). Step three then designates additional removal countries should the INS be unsuccessful in removing the alien at steps one and two. That section provides, in its entirety:

> If an alien is not removed to a country under the previous subparagraphs of this paragraph, the Attorney General shall remove the alien to any of the following countries:
>
> (i) the country from which the alien was admitted to the United States.
>
> (ii) The country in which is located the foreign port from which the alien left for the United States or for a foreign territory contiguous to the United States.
>
> (iii) A country in which the alien resided before the alien entered the country from which the alien entered the United States.
>
> (iv) The country in which the alien was born.
>
> (v) the Country that had sovereignty over the alien's birthplace when the alien was born.
>
> (vi) The country in which the alien's birthplace is located when the alien is ordered removed.
>
> (vii) If impracticable, inadvisable, or impossible to remove the alien to each country described in a previous clause of this subparagraph, another country whose government will accept the alien into that country.

8 U.S.C. § 1231(b)(2)(E). The parties agree that petitioner's removal must be determined at step three of the selection process since petitioner did not designate a country in a timely fashion and because the "government of the country" of which petitioner is a "citizen," has not informed the INS that it will accept petitioner into the country. In this case, the reason the INS has not received acceptance is because Somalia presently lacks a functioning central government. The Magistrate Judge thus properly turned his attention to § 1231(b)(2)(E).

Upon review of the statutory provisions discussed above, the Magistrate Judge concluded that the acceptance requirement included in step two of the country selection process would be rendered meaningless if the INS in step three could send an alien to the country in which he was born without obtaining that country's consent. The Magistrate Judge noted that a removable alien will almost invariably be a "subject, national or citizen" of the country in which he was born. As a result, the acceptance requirement of § 1231(b)(2)(D) is easily circumvented by § 1231(b)(2)(E)(iv) if the latter clause is read not to require acceptance. Therefore, in order to render meaningful force to all the portions of the statute, the Magistrate Judge concluded that the acceptance requirement listed in the seventh clause of step three, § 1231(b)(2)(E)(vii), was meant to apply to all the clauses listed in § 1231(b)(2)(E), including § 1231(b)(2)(E)(iv).

The Court concurs with the reasoning and conclusion of the Magistrate Judge. It is well established that when interpreting a statute, a court must seek to adopt a construction that gives effect to all its provisions. *Foulk v. Charrier,* 262 F.3d 687, 704 (8th Cir. 2001) (rejecting interpretation that would render portion of the statute

meaningless); *United States v. Herron,* 97 F.3d 234, 237 (8th Cir. 1996) (rejecting interpretation of statute that would render element of the statute repetitive and meaningless); *McNely v. Ocala Star Banner Corp.*, 99 F.3d 1068, 1075 (11th Cir. 1996) (courts should avoid interpretations in which a literal interpretation of a statute produces absurd results). In addition, relevant case law interpreting 8 U.S.C. § 1253(a), the statutory predecessor of § 1231(b)(2), supports the Magistrate Judge's statutory construction. *United States ex rel. Tom Man v. Murff,* 246 F.2d 926 (2d Cir. 1959); *Lu v. Rogers,* 164 F. Supp. 320, 321 (D.D.C. 1958); *United States ex rel. Wong Kan Wong v. Esperdy,* 197 F. Supp. 914, 917 (S.D.N.Y. 1961); *Hom Sin v. Esperdy,* 209 F. Supp. 3, 4 (S.D.N.Y. 1962). In *Tom Man*, the leading case on this issue, the court interpreted the third step of § 1253(a) the same way as the Magistrate Judge interpreted § 1231(b)(2)(E) here:

> There remains therefore one or more of the seven subdivisions of 243(a) of which number three certainly covers him and probably several others. **However, we think that deportation under any of these is subject to the condition expressed in the seventh subdivision: i.e. that the "country" shall be "willing to accept" him "into his territory."**

*Id.* at 928 (emphasis added).

In an attempt to divorce itself from the force of *Tom Man* and the Magistrate Judge's reasonable interpretation of § 1231(b)(2)(E), the INS argues that the Magistrate Judge's reliance on *Tom Man* and other cases interpreting § 1253(a) is misplaced because it ignores the "revision and reorganization" of the new statute. The Court has carefully reviewed both statutes but finds no meaningful distinction between the two statutes. Aside from the introduction of subheadings into the statute's text, the language in the old

statute, as the government itself concedes, contains the same or similar language that is found in § 1231(b)(2). Accordingly, the holdings in *Tom Man* and similar cases are on all fours with the interpretation of the statute in this case.

In interpreting the statute as he did, the Magistrate Judge also pointed out that in fifty pages of briefing, the government "has not cited a single case in which a federal court has sanctioned the removal of a legally admitted alien to a country that has not agreed to accept him." Report and Recommendation at 18 (emphasis in original). Now for the first time, the INS points to a Board of Immigration Appeals decision interpreting § 1253(a) in support of its argument that acceptance from the receiving country is not required to remove an alien pursuant to § 1231(b)(2)(E)(iv). *Matter of Niesel*, A-12281979, 1962 WL 12904 (BIA Aug. 10, 1962) (concluding that "[w]hen designating a country in step three as a place of deportation, there is no requirement that preliminary inquiry be addressed to the country to which deportation is ordered (other than perhaps the seventh country in the list—a country which is willing to accept the alien into its territory)"). The INS argues that the Court should extend deference under *Chevron U.S.A. Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837, 842 (1984), to the BIA's interpretation of § 1253(a).

In *INS v. Aguirre-Aguirre,* 526 U.S. 415 (1999), the Supreme Court held that the principles of *Chevron* generally apply to the statutory scheme set out in the INA. *Id.* at 424. However, under *Chevron,* a court only defers "to agency interpretations of statutes, that, applying the normal 'tools of statutory construction,' are ambiguous." *St. Cyr,* 121 S. Ct. at 2290, n.45 (quoting *Chevron,* 467 U.S. at 543). In this case, the Court finds that

Congress expressed its intent clearly in § 1231(b)(2) that acceptance is required by the receiving country and that this requirement applies to all three steps of the removal process, including all the clauses listed in § 1231(b)(2)(E). Accordingly, having found no ambiguity in the statute, under *Chevron*, the Court need not defer to the BIA's 1962 interpretation. *Valansi v. Ashcroft,* 278 F.3d 203, 208-14 (3d Cir. 2002) (court did not defer to the BIA's interpretation of 18 U.S.C. § 656 because statutory language has a clear meaning). The government's objections to the Magistrate Judge's interpretation of § 1231(b)(2)(E) are thus overruled.

## III. Political Question

In the final part of its objections, the INS argues for the first time that the Attorney General's decision to execute petitioner's removal order presents a nonjusticiable political question committed to the executive branch of government. Specifically, the INS claims that the determination of what constitutes "acceptance" under § 1231(b)(2) is a determination clearly committed to and best answered by the political branches of government and therefore is beyond the institutional competency of the judiciary.

Clearly, an affirmative agreement between two governments that have some level of diplomatic relations would constitute acceptance under the statute. Ideally, this would be the situation in all cases. The more difficult question arises where either there are no diplomatic relations or there exists no functioning central government in the receiving country. Whether the Attorney General can find acceptance in those circumstances is a difficult question but one that the Court need not address in this case because the INS has conceded there is no acceptance. Throughout fifty pages of briefing to the Magistrate

Judge, the INS admitted that there was no "acceptance" of the petitioner from a functioning government in Somalia. Rather, it argued that acceptance was not required by the congressional statute authorizing removal, § 1231(b)(2)(E). Because of this concession, the Court will not now entertain the INS's claim that the Court's ability to define what is or is not "acceptance" under § 1231(b)(2) is a question best answered by the executive branch of government.

While a formal written "acceptance" executed by two countries who have diplomatic relations is surely the preferred form of acceptance, other forms of acceptance based on custom and practice showing mutual agreement between two countries may also be sufficient under the statute. It is difficult for the Court to see how the INS's apparent current practice of dropping off an alien in a territory with no functioning government complies with the statute. In essence, "acceptance" occurs under this policy when no one returns the deported alien. The silence of a non-functioning government in a lawless territory – with grave risks to the deported alien – simply cannot constitute "acceptance" under § 1231(b)(2).

The Court overrules the INS's objections and adopts the report and recommendation of the Magistrate Judge.

## ORDER

Based on the foregoing, the submissions of the parties, and all of the files, records, and proceedings herein, the Court **OVERRULES** respondent's objections [Docket No. 22] and **ADOPTS** the Report and Recommendation of the Magistrate Judge [Docket No. 18]. Accordingly, **IT IS HEREBY ORDERED** that:

1. Respondent's Motion to Dismiss [Docket No. 6] is **DENIED**.

2. Petitioner's application for a writ of habeas corpus [Docket No. 1] is **GRANTED**.

3. Respondent is ordered not to remove Petitioner from the United States until the government of the country to which he is to be removed has agreed to accept him and upon further order of this Court.

DATED: March 31, 2002
at Minneapolis, Minnesota.

John R. Tunheim

JOHN R. TUNHEIM
United States District Judge