UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

KEYSE G. JAMA,

Petitioner,

v.

JOHN ASHCROFT, Attorney General of the United States of America, CURTIS ALJETS, District Director of the Immigration and Naturalization Service, MARY ANN WYRSCH, Acting Commissioner of the Immigration and Naturalization Service,

Respondents.

Civil File No. 01-1172 (JRT/AJB)

**REPORT AND RECOMMENDATION**

Jeffrey J. Keyes and Kevin M. Magnuson, Briggs and Morgan, 2400 IDS Center, 80 South Eighth Street, Minneapolis, Minnesota, 55402, for Petitioner.

Greg D. Mack, Office of Immigration Litigation, U.S. Department of Justice, Civil Division, P.O. Box 878, Ben Franklin Station, Washington D.C., 20044, for Respondents.

ARTHUR J. BOYLAN, United States Magistrate Judge

This matter is presently before the undersigned Magistrate Judge of the District Court for consideration of Petitioner's amended application for habeas corpus relief pursuant to 28 U.S.C. § 2241. (Docket No. 37.) The matter has been referred to this Court for a report and recommendation pursuant to 28 U.S.C. § 636 and Local Rule 72.1(c). For the reasons discussed below, the Court will recommend that Petitioner's amended habeas corpus petition be denied and that this action be dismissed.

## I. BACKGROUND

Petitioner is an alien from Somalia who was granted admission to this country in 1996. He was admitted as a refugee, and he never gained citizenship or resident alien

JUN 04 2003
FILED
RICHARD D. SLETTEN, CLERK
JUDGMENT ENTD
DEPUTY CLERK

status. In June 1999, he got into a fight and was arrested. A few months later he was convicted of third degree assault, a felony under Minnesota law. Because of that conviction, the United States Immigration and Naturalization Service, ("INS"),[1] initiated removal proceedings against Petitioner. By May 2001, a final removal order had been entered against Petitioner, directing that he be removed to Somalia. The INS has been holding Petitioner in custody at all times since the removal order was entered.

Petitioner commenced this habeas corpus action in June 2001. In his original petition, he argued that the INS could not legally remove him to Somalia because there was no functioning government in that country that could issue any travel documents or otherwise formally consent to his return. Respondents opposed the original petition, claiming that Petitioner's removal to Somalia could properly be carried out even though Somalia has no functioning government. Respondents contended that the INS had a plan to deliver Petitioner to Somalia that could be implemented without any formal consent or acceptance by a Somali government. They argued that the INS's repatriation plan was both workable and legal.[2]

---

[1] As a result of a recent government reorganization, the agency formerly known as the INS is now known as the Bureau of Immigration and Customs Enforcement, ("BICE"). For now, however, the Court will continue to use the name INS, because that is how the agency has been identified throughout these proceedings.

[2] This Court previously summarized the INS removal plan as follows:

> "The INS intends to give Petitioner a choice of four cities in Somalia where he can be dropped off. After Petitioner has selected a city to land in, the INS intends to prepare, and issue to him, a "Form I-269 (Certificate of Identity) which is used when a passport travel document is unavailable." (Respondent's Return, [Docket No. 5], p. 8.) The INS would then prepare a travel itinerary to return Petitioner to Somalia. If the INS follows its past practice, (and there is no indication that it will not), Petitioner probably would

After reviewing the record and the applicable law, this Court concluded that Petitioner could not be removed to Somalia without the acquiescence of a functioning Somali government. It was therefore recommended that Petitioner's original habeas corpus petition should be granted, and that the INS should be ordered not to remove Petitioner to Somalia, or any other country, unless the government of the recipient country first agreed to accept him. (Report and Recommendation dated February 1, 2002; [Docket No. 18].) The District Court Judge adopted that recommendation in a Memorandum Opinion and Order dated March 31, 2002. (Docket No. 27; [reported at Jama v. Immigration and Naturalization Service, (D.Minn. 2002), 2002 WL 507046].)

The District Court Judge's order granting Petitioner's original habeas corpus petition did not cause Petitioner to be released from custody; it merely barred the INS from removing him to another country without some formal acceptance by that country. Petitioner had not yet asked to be released from INS custody, and the District Court Judge's order did not provide such relief. Therefore, Petitioner remained in INS custody after the writ was granted on his original habeas petition.

---

> be put on a plane with two INS deportation officers and sent to Sweden. From there, Petitioner and the two deportation officers would fly to the City of Dubai, in the United Arab Emirates. The deportation officers would then put Petitioner on another flight bound for the Somali city of his choice, and Petitioner would travel that final leg of the journey alone. The deportation officers apparently would stay in Dubai long enough to satisfy themselves that Petitioner was not returned to Dubai on a flight back from Somalia. (Respondent's Exhibits, [Docket No. 8], pp. 243-44.) They would then return to the United States, presumably without any knowledge of Petitioner's fate upon his arrival in Somalia."

Report and Recommendation dated February 1, 2002, (Docket No. 18), at p. 5.

Immediately after the District Court Judge ruled on the original petition, Respondents filed an appeal with the Eighth Circuit Court of Appeals. At approximately the same time, Petitioner applied here in the District Court for leave to file an amended habeas corpus petition. Petitioner wanted to amend so he could challenge his continuing INS detention. Petitioner's request for leave to amend was granted, (Docket No. 36), and his amended petition was filed, (Docket No. 37). The claims raised in the amended petition, challenging Petitioner's continuing INS detention, have now been fully briefed and are ripe for adjudication.

During the entire time that the amended petition has been pending here, Respondents' appeal, pertaining to the original petition, has been before the Circuit Court. Just recently, however, the Court of Appeals reversed the District Court Judge's order that granted Petitioner's original habeas corpus petition. In a two-to-one decision dated May 27, 2003, the Court of Appeals held that the INS does not have to get any governmental consent or acceptance before completing Petitioner's removal to Somalia. Jama v. Immigration and Naturalization Service, No. 02-2324 (8th Cir. May 27, 2003), 2003 WL 21212090. The case was remanded with instructions to the District Court to enter a new order denying the original habeas petition. Id. at *5.

Thus, as of now, the INS is free to carry out its plan to remove Petitioner to Somalia, even though there still is no functioning government there to accept his return. Because of the Court of Appeals' recent ruling on Petitioner's original habeas petition, there is now nothing to prevent the INS from implementing its original repatriation plan, (see footnote 2, supra), at any time.

## II. DISCUSSION

Petitioner's amended habeas corpus petition, in which he challenges the INS's authority to keep him in custody long after his removal order became final, is based on Zadvydas v. Davis, 533 U.S. 678 (2001). In Zadvydas, the Supreme Court considered whether the INS could detain removable aliens indefinitely pursuant to § 1231(a)(6).[3] The Court found that "[a] statute permitting indefinite detention of an alien would raise a serious constitutional problem." 533 U.S. at 690. However, § 1231(a)(6) was not held unconstitutional, because the Court determined that the statute, as construed to preserve its constitutionality, does not actually authorize indefinite INS detention. According to the majority opinion –

> "In our view, the statute, read in light of the Constitution's demands, limits an alien's post-removal-period detention to a period reasonably necessary to bring about that alien's removal from the United States. It does not permit indefinite detention."

Id. at 689.

---

[3] 8 U.S.C. § 1231(a)(6), the statute that authorizes the INS to detain removable criminal aliens pending the execution of removal orders, provides as follows:

> "An alien ordered removed who is inadmissible under section 1182 of this title, removable under section 1227(a)(1)(C), 1227(a)(2), or 1227(a)(4) of this title or who has been determined by the Attorney General to be a risk to the community or unlikely to comply with the order of removal, may be detained beyond the removal period and, if released, shall be subject to the terms of supervision in paragraph (3)."

The "removal period" referred to in § 1231(a)(6) is a 90-day period following the entry of a removal order. 28 U.S.C. § 1231(a)(1). Paragraph (3) of § 1231(a), (referred to at the end of § 1231(a)(6)), directs the INS to impose certain terms and conditions of release for aliens who are subject to removal orders, but have not yet been removed by the end of the 90-day removal period.

The Court ultimately held in Zadvydas that a removable resident alien cannot be detained indefinitely, but he can be lawfully and constitutionally detained for "a period reasonably necessary to bring about that alien's removal from the United States." Id. The Court further held that six months is a presumptively reasonable time in which to complete an alien's removal. Id. at 701. "After this 6-month period, once the alien provides good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future, the Government must respond with evidence sufficient to rebut that showing." Id.

In the instant case, the INS acknowledges that "Petitioner's post-removal-order immigration custody began on or about... May 9, 2001." (Respondent's Return, Motion to Dismiss, and Memorandum In Support, [Docket No. 47], p. 7.) The presumptively reasonable period for completing Petitioner's removal, per Zadvydas, ended six months later, on or about November 9, 2001. Because the presumptively reasonable period for completing removal has expired (long ago), the Court must consider whether Petitioner has provided "good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future," and if so, whether Respondent has offered "evidence sufficient to rebut that showing." Zadvydas, 533 U.S. at 701.

Prior to the Court of Appeals' recent decision in this case, Petitioner would have been able to sustain his burden of showing "good reason to believe that there is no significant likelihood" that he would be removed from the United States "in the reasonably foreseeable future." Before the Eighth Circuit's decision was handed down, Petitioner possessed a valid federal court order, entered by the District Court Judge in this matter, which expressly forbade the INS from removing Petitioner to Somalia or any other country

without the formal consent of that country's government. 2002 WL 507046 at *7 ("Respondent is ordered not to remove Petitioner from the United States until the government of the country to which he is to be removed has agreed to accept him and upon further order of this Court"). As long as that order was in effect, it was highly unlikely that Petitioner would be removed from the United States in the foreseeable future, because there was no reason to believe that Somalia would soon have a government capable of accepting Petitioner's return, and there was no reason to believe that any other country would soon agree to accept him.

That all changed, however, when the Court of Appeals vacated the District Court Judge's ruling on Petitioner's original habeas corpus petition. The Court of Appeals expressly "reverse[d] the district court's order granting the writ, and remand[ed] the case to the district court for the entry of an order denying [Petitioner's original] habeas petition." 2003 WL 21212090 at *5. The Court of Appeals' decision effectively eliminated the only roadblock that has been preventing Petitioner from being removed to Somalia. Petitioner has acknowledged that it is only his original petition and the resulting writ of habeas corpus that has forestalled his removal to Somalia. In his memorandum in support of his amended petition, (Docket No. 51), he says (at p. 4) that "had this Petition not been filed, Petitioner would have been removed and the legality of the removal never tested." (Emphasis added.) By vacating the writ of habeas corpus in this matter, the Court of Appeals has cleared the way for Petitioner's immediate removal to Somalia.[4]

---

[4] The Court is aware that a district court in the State of Washington has entered an injunction that generally prohibits the INS from deporting anyone to Somalia. Ali v. Ashcroft, 213 F.R.D. 390 (W.D.Wash. 2003). That injunction, however, does not protect the instant Petitioner from immediate removal, because he is not a member of the certified

The INS has deported many other native Somalis back to their homeland since the collapse of the Somali government in the early 1990s. See Ali v. Ashcroft, 213 F.R.D. 390, 396 (W.D.Wash. 2003) (noting that "[s]ince 1997, 196 Somali nationals have been removed to Somalia"). The same INS schemes that have been used to remove other Somalis, (see footnote 2, supra), presumably could be applied to Petitioner as well. Indeed, it has always been possible, as a practical matter, to send Petitioner back to Somalia. The only thing that has stopped the INS from effecting Petitioner's removal before now is the writ of habeas corpus that was previously entered by the District Court Judge in this matter. As a result of the Eighth Circuit's reversal of that order, it is now legally possible, as well as practically possible, to return Petitioner to Somalia immediately.

The Court recognizes that Petitioner has now been held in post-removal-order custody for more two years, and that it might still take many more weeks or months (or perhaps even longer) before the INS will actually be able to complete Petitioner's removal. However, the six-month presumptive removal period specified in Zadvydas does not establish a rigid cut-off point for post-removal-order detention. The Supreme Court expressly stated that even after the expiration of the six-month presumptive removal period, "an alien may be held in confinement until it has been determined that there is no significant likelihood of removal in the reasonably foreseeable future." 533 U.S. at 701.

---

class of individuals protected by the injunction. Somali aliens who have commenced their own habeas actions challenging removal, (such as Petitioner here), are expressly excluded from the class certified by the Washington district court. Id. at 396 (the certified class consists of "[a]ll persons in the United States who are subject to [final] orders of removal, expedited removal, deportation or exclusion to Somalia,... excluding any person with a habeas petition pending, or on appeal, raising the issue of unlawful removal to Somalia..."). (Emphasis added.)

In light of the Eighth Circuit's recent ruling on Petitioner's original habeas claims, it now appears that it will be just a matter of time before the INS will be able to complete Petitioner's removal to Somalia.[5] At this point, it cannot be said that "there is no significant likelihood of removal in the reasonably foreseeable future." Id. Even though Petitioner has already been detained far longer than the presumptively reasonable six-month removal period discussed in Zadvydas, it does not appear that he will be detained indefinitely. Thus, the Court concludes that Petitioner's ongoing post-removal-order detention by the INS is legally and constitutionally permissible under Zadvydas. The Court will therefore recommend that Petitioner's amended habeas corpus petition be denied at this time.

Finally, the Court points out that the phrase "at this time" is being deliberately added to the recommended disposition of Petitioner's amended habeas petition. As the Supreme Court pointed out in Zadvydas, the longer it takes for the INS to remove an alien, the more untenable his ongoing detention becomes. 533 U.S. at 701 ("as the period of prior post-removal confinement grows, what counts as the 'reasonably foreseeable future' conversely would have to shrink"). If the INS is for any reason unable to remove Petitioner expeditiously, he might be able to sustain a Zadvydas claim at some point in the future. Therefore, the dismissal of the current amended habeas corpus petition should not automatically preclude Petitioner from seeking habeas relief again at some later date.

---

[5] It is theoretically possible, of course, that the recent Court of Appeals' decision in Petitioner's case could be overturned on en banc review by the entire Eighth Circuit, or on certiorari review by Supreme Court. As of now, however, this Court is bound by the Eighth Circuit's current opinion in the matter, which clearly gives the INS the "green light" to remove Petitioner to Somalia at any time.

## III. RECOMMENDATION

Based on the foregoing, and all the files, records and proceedings herein,

**IT IS HEREBY RECOMMENDED** that:

1. Petitioner's amended habeas corpus petition, (Docket No. 37), be DENIED at this time; and

2. This action be DISMISSED.

Dated: June 4, 2003

ARTHUR J. BOYLAN
United States Magistrate Judge

Pursuant to Local Rule 72.1(c)(2), any party may object to this Report and Recommendation by filing with the Clerk of Court, and by serving upon all parties, written objections which specifically identify the portions of the Report to which objections are made and the bases for each objection. This Report and Recommendation does not constitute an order or judgment from the District Court and it is therefore not directly appealable to the Circuit Court of Appeals. Written objections must be filed with the Court before June 19, 2003.