**UNITED STATES DISTRICT COURT**

**DISTRICT OF MINNESOTA**

---

KEYSE G. JAMA,

Petitioner,

v.

JOHN ASHCROFT, Attorney General of the United States of America; MICHAEL GARCIA, Assistant Secretary, Bureau of Immigration and Customs Enforcement; SCOTT BANIECKE, Acting Field Director, Bureau of Immigration and Customs Enforcement,

Respondents.

Civil No. 01-1172 (JRT/AJB)

**MEMORANDUM OPINION AND ORDER**

---

Jeffrey J. Keyes and Kevin M. Magnuson, BRIGGS AND MORGAN, 2200 IDS Center, 80 South Eighth Street, Minneapolis, MN, 55402, for petitioner.

Lonnie F. Bryan, Assistant United States Attorney, OFFICE OF THE UNITED STATES ATTORNEY, 600 United States Courthouse, 300 South Fourth Street, Minneapolis, MN 55415; Christine A. Bither and Greg D. Mack, Office of Immigration Litigation, UNITED STATES DEPARTMENT OF JUSTICE, Civil Division, 1331 Pennsylvania Avenue, NW, Room 700S, Washington D.C., 20530, for respondents.

Petitioner Keyse Jama filed a petition for a writ of habeas corpus, seeking an order that would bar the government[1] from deporting him to Somalia. Jama initially sought a

---

[1] At the time this action was filed, the Immigration and Naturalization Service ("INS") was the governmental entity responsible for removing aliens. In March of 2003, the INS was

Footnote continued on next page.

FILED OCT 24 2003
RICHARD D. SLETTEN, CLERK
JUDGMENT ENTD. OCT 24 2003
DEPUTY CLERK

ruling that he could not be removed to Somalia because the country has no functioning government. Jama later amended his petition to include a request for release pending his removal. In a Report and Recommendation ("R&R") dated June 4, 2003, Magistrate Judge Arthur J. Boylan recommended that petitioner's amended habeas petition be denied without prejudice. Magistrate Judge Boylan was careful to note, however, that the INS could not detain Jama indefinitely, and that "[i]f the INS is for any reason unable to remove Petitioner expeditiously, he might be able to sustain a *Zadvydas* claim at some point in the future." (R&R at 9.) The Court finds that the "some point in the future" has been reached, and for the reasons discussed below grants Jama's petitioner for habeas corpus.

## BACKGROUND

Jama is an alien from Somalia who was admitted as a refugee to the United States in 1996. In June 1999, Jama got into a fight and was arrested. He was eventually convicted of third degree assault, and the INS (k/n/a BICE) initiated removal proceedings against him. A final removal order had been entered by May of 2001. Jama has been in INS (k/n/a BICE) custody since then. He commenced this habeas corpus action in June of 2001, originally arguing that he could not be removed to Somalia because there was no functioning government in that country to consent to his return. The government

---

(Footnote continued.)

abolished, and its immigration enforcement functions were transferred to the Bureau of Immigration and Customs Enforcement ("BICE"), an agency within the Department of Homeland Security. To avoid confusion, this Court will refer to the organization as "INS (k/n/a BICE)."

conceded that Somalia has no functioning government, but argued that it nonetheless could remove Jama to Somalia. On March 31, 2002, this Court issued an Order restraining the government from removing Jama until a country agreed to accept him and on further order of the Court.

On May 27, 2003, a divided panel of the Eighth Circuit agreed with the government, and determined that the BICE did have the authority to deport petitioner to Somalia. *Jama v. Immigration and Naturalization Service*, 329 F.3d 630 (8th Cir. 2003). Petitioner's request for rehearing was denied and he has not petitioned the Supreme Court for *certiorari*.

Before the Eighth Circuit issued the May 27, 2003, ruling, Jama obtained leave to amend his habeas petition to add a "*Zadvydas*" claim. *Zadvydas v. Davis*, 533 U.S. 678 (2001). The Eighth Circuit's opinion in *Jama v. Immigration and Naturalization Service*, 329 F.3d 630, did not address Jama's *Zadvydas* claim. The Court now addresses that issue.

## DISCUSSION

### I. *Zadvydas*

In *Zadvydas v. Davis*, the Supreme Court held that the government could not detain removable aliens indefinitely. *Zadvydas*, 533 U.S. at 682. Instead, the Court determined that removable aliens could be held only for a "reasonable" time. The Court noted that six months is presumptively reasonable. *Id.* After the expiration of six months, "once the alien provides good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future, the Government must respond

with evidence sufficient to rebut that showing." *Id.* at 701. *Zadvydas* instructs that if the Government cannot rebut the showing that there is no significant likelihood of removal in the reasonably foreseeable future, release may be appropriate. *Id.*

The petitioners in *Zadvydas* were resident aliens who had lived in the United States and were to be deported because each had committed serious crimes. *Id.* at 684-85. The Court did not focus on the nature of the crimes, and instead reasoned that in determining whether continued detention is "reasonable" the habeas court "should measure reasonableness primarily in terms of the statute's basic purpose, namely, assuring the alien's presence at the moment of removal." *Id.* at 699.

## II. Statutory Framework

Section 1231 of Chapter 8 of the United States Code provides that "when an alien is ordered removed, the Attorney General shall remove the alien from the United States within a period of 90 days (in this section referred to as the "removal period")." 8 U.S.C. § 1231(a)(1)(A). Sub-section (B) further provides that "[t]he removal period begins on the latest of the following:

(i) The date removal order becomes administratively final.

(ii) If the removal order is judicially reviewed and if a court orders a stay of the removal of the alien, the date of the court's final order.

(iii) If the alien is detained or confined (except under an immigration process), the date the alien is released from detention or confinement."

In some circumstances, the removal period is suspended. 8 U.S.C. § 1231(a)(1)(C). The 90 day period is suspended "if the alien fails or refuses to make timely application in good faith for travel or other documents necessary to the alien's

departure or conspires or acts to prevent the alien's removal subject to an order of removal." *Id.*

**III. Application**

The government suggests first that it may continue to hold Jama pending his removal because Jama has obtained a judicial stay of the authority to remove him, and consequently the 90-day removal period has not expired. The government would have the Court apply 8 U.S.C. § 1231(a)(1)(B)(ii) to measure the 90-day removal period. The Court does not find that section applicable to the facts in this particular case. As the Eighth Circuit noted, Jama has asked for review of a pure question of law, *Jama*, 329 F.3d at 633, such a request "is not a typical request for review of the merits of a removal order." *Farah v. Immigration and Naturalization Service*, 2003 WL 221809, No Civ. 02-4724 at *4 (D. Minn. Jan. 29, 2003).

If (a)(1)(B)(ii) is not applicable, the 90-day period starts on the later of (i) the date the order of removal becomes administratively final or (iii) the date the alien is released from detention or confinement (not under an immigration process). In this case, the later of those dates is the date that the administrative order became final, which was May 25, 2001. Therefore the 90-day removal period is long expired.

The government alternately argues that in this case, the 90-day removal period should be extended because by filing a habeas petition, Jama acted to prevent his removal. Courts in this District have repeatedly rejected this argument. *Farah*, 2003 WL 221809, No. Civ. 02-4724 (D. Minn. Jan. 29, 2003); *see also Omar v. Immigration and Naturalization Service*, 2003 WL 1856432, No. Civ. 02-1387 (D. Minn. April 8, 2003)

(agreeing with *Farah* and noting that "the filing of the [habeas] Petitions in this case did not prohibit removal"). *See also Arevalo v. Ashcroft*, 260 F. Supp. 2d 347, 349-51 (D. Mass. 2003) (holding that alien who filed habeas petition and was granted stay of removal had "simply exercised her statutory rights" and had not acted to prevent her removal). The Court finds the government's argument no more persuasive in this case. "[T]he filing of a habeas petition on the basis of a pure question of law does not qualify as conspiring or acting to prevent his removal, acts which would restart the 90-day removal period." *Farah*, 2003 WL 221809 at *5; *see also Jama*, 329 F.3d at 633 (noting that Jama's habeas petition presented a pure question of law).

The government urges that "Congress could not have intended that Jama benefit from his own conduct by obtaining release under these circumstances." Courts, however, have reasoned to the contrary, and hold that where a petitioner has "simply exercised [his] statutory rights . . . [a]ny sanctions, never mind deprivation of liberty, are not only incongruent with the statutory language, but are also illogical and fundamentally unfair." *Arevalo v. Ashcroft*, 260 F. Supp. 2d 347, 350 (D. Mass. 2003).

Because the government does not represent that it is likely that Jama will be deported in the "reasonably foreseeable" future, his continued detention is constitutionally suspect. As Judge Frank found in the *Farah* case, "[r]espondents have not provided a rational reason to require petitioner's continued detention while waiting for another six months to pass." *Farah*, 2003 WL 221809 at *6.

Jama has been detained pending removal since May 25, 2001. The Eighth Circuit held that Jama could be removed to Somalia in May of this year, and the Report and

Recommendation issued in June. It is now late October, and the government has provided no evidence that it has taken any steps to remove Jama. Further, Jama is one of only several individuals who could possibly be deported to Somalia. All remaining potential deportees are members of the class for whom deportation has been halted. *Ali v. Ashcroft*, 2003 WL 22137018, (9th Cir. Sept. 17, 2003). A national policy of deporting only the handful of individuals not subject to the national class seems unlikely and the government does not contend that it is prepared to deport such individuals any time soon. It seems especially unlikely given the elaborate procedure that the government proposes to implement when it does decide to deport individuals to Somalia. Apparently, the government plans to contract with a foreign contractor who would in turn "contract" with a "warlord" to accomplish the relocation, an unseemly transaction that would appear a viable plan only with a relatively large group of deportees. In addition, the plan likely raises human rights concerns. The government has not suggested that concrete steps have been taken to put forth a more viable removal plan.

This is a civil proceeding intended to be nonpunitive in nature. For twenty-nine months, Jama has been held primarily with the general prison population, in a state correctional institution. The government has presented no evidence that he is a flight risk, or that if released he presents a danger to the community. Given the above considerations, it is fair to say that the government will not remove Jama in the "reasonably foreseeable" future, and therefore, pursuant to the Supreme Court's decision

in *Zadvydas v. Davis*, 533 U.S. 678 (2001), Jama must be released with appropriate conditions.[2]

## IV. Proper Respondent

Finally, the government requests that the Attorney General be dismissed as a respondent, suggesting that Jama is detained by Scott Baniecke, Acting Field Director for the Bureau of Immigration and Customs Enforcement, and therefore Mr. Baniecke is the appropriate respondent. The case law regarding the proper respondent to habeas petitions filed by detained aliens has been described as sparse, incoherent, and in disarray. *Vasquez v. Reno*, 233 F.3d 688, 691-92 (1st Cir.), *cert. denied*, 534 U.S. 816 (2001). *See also Armentero v. Immigration and Naturalization Service*, 340 F.3d 1058, 1068 (9th Cir. 2003) (stating that "neither Supreme Court case law nor [Ninth Circuit] precedent states a clear path toward identifying the proper respondent or respondents in an immigration detainee's habeas petition"). The Ninth Circuit recently confirmed its holding that the Attorney General is the proper respondent to an immigration habeas petition. *Ali v. Ashcroft*, 2003 WL 22137018 (9th Cir. Sept. 17, 2003) (quoting *Armentero*, 340 F.3d at 1068). That Court cited "the necessity to base the concept of 'custodian' more on the legal reality of control than the technicalities of who administers on a day-to-day basis the facility in which an individual is detained." *Id. See also Henderson v. Immigration and Naturalization Service*, 157 F.3d 106, 125-26 (2d Cir. 1998) (emphasizing the

[2] Jama has been in custody for twenty-nine continuous months. Although only five months have passed since the Eighth Circuit determined that Jama could be removed to Somalia, the Court finds good cause for shortening the "presumptive six month" period set out in *Zadvydas*.

Attorney General's "unique role" as the "ultimate decision-maker" in immigration habeas actions, but declining to decide the issue). "Because immigration detainees are often transferred between different institutions around the country, the local INS District Director is a 'local figurehead' who is not an appropriate respondent." *Ali*, ___ F.3d ___, 2003 WL 22137018 at *11 (quoting *Armentero*, 340 F.3d at 1071). Given the state of law concerning the appropriate respondent, the Court finds that the more prudent course is to continue with the Attorney General as a respondent in the instant case.

## ORDER

Based on the foregoing, the submissions of the parties, and all of the files, records, and proceedings herein, the Court **SUSTAINS** petitioner's objections [Docket No. 55] and **REJECTS** the Report and Recommendation of the Magistrate Judge [Docket No. 53].

Accordingly, **IT IS HEREBY ORDERED** that petitioner's application for a writ of habeas corpus [Docket No. 1] is **GRANTED**. Respondent is ordered to release petitioner under **reasonable** supervised release conditions within three days of the date of this Order.

DATED: 24 October 2003
at Minneapolis, Minnesota.

JOHN R. TUNHEIM
United States District Judge

# UNITED STATES DISTRICT COURT
## District of Minnesota

700 Federal Building
316 North Robert Street
St. Paul, MN 55101

202 U.S. Courthouse
300 South Fourth Street
Minneapolis, MN 55415

417 Federal Building
515 West First Street
Duluth, MN 55802

## CIVIL NOTICE

The purpose of this notice is to summarize the time limits for filing with the District Court Clerk's Office a Notice of Appeal to the Eighth Circuit Court of Appeals from a final decision of the District Court in a civil case.

> ***This is a summary only. For specific information on the time limits for filing a Notice of Appeal, review the applicable federal civil and appellate procedure rules and statutes.***

Rule 4(a) of the Federal Rules of Appellate Procedure (Fed. R. App. P.) requires that a Notice of Appeal be filed within:

1. Thirty days (60 days if the United States is a party) after the date of "entry of the judgment or order appealed from;" or

2. Thirty days (60 days if the United States is a party) after the date of entry of an order denying a timely motion for a new trial under Fed. R. Civ. P. 59; or

3. Thirty days (60 days if the United States is a party) after the date of entry of an order granting or denying a timely motion for judgment under Fed. R. Civ. P. 50(b), to amend or make additional findings of fact under Fed. R. Civ. P. 52(b), and/or to alter or amend the judgment under Fed. R. Civ. P. 59; or

4. Fourteen days after the date on which a previously timely Notice of Appeal was filed.

If a Notice of Appeal is not timely filed, a party in a civil case can move the District Court pursuant to Fed. R. App. P. 4(a)(5) to extend the time for filing a Notice of Appeal. This motion must be filed no later than 30 days after the period for filing a Notice of Appeal expires. If the motion is filed after the period for filing a Notice of Appeal expires, the party bringing the motion must give the opposing parties notice of it. The District Court may grant the motion, but only if excusable neglect or good cause is shown for failing to file a timely Notice of Appeal.

# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

### Prehearing Conference Program

The United States Court of Appeals for the Eighth Circuit has established an early intervention Prehearing Conference Program. The purpose of the program is twofold: (1) to facilitate settlement discussions in civil cases by providing an impartial atmosphere for an open discussion of the case and alternative methods of disposition and (2) to promote the delineation of issues, early resolution of procedural problems, and effective administration of an appeal throughout the appellate process. See 8th Cir. R. 33A.

The program is directed by Mr. John Martin. Mr. Martin screens newly filed appeals based on information furnished by both appellants and appellees in the court's Appeal Information Forms A and B. Contact with counsel is by telephone and in personal conferences held in several cities throughout the Circuit. All communications with Mr. Martin are confidential. Counsel can openly discuss and evaluate the issues and explore alternatives in a non-adversarial setting without fear that the subsequent processing of the appeal or ultimate disposition of the case will be adversely affected by participation in the program.

Participation in the program is voluntary. However, the Court strongly encourages your participation and cooperation. Over the past twenty years, the program has enabled many appellate litigants to achieve mutually satisfactory resolution of certain issues or an overall settlement prior to progressing through all stages of the appellate process. Issue delineation enables counsel to focus only on those issues that need judicial resolution. The program has helped relieve the ever-increasing caseload confronting the Court, and it has also saved litigants and attorneys substantial amounts of time and money.

In order for the program to function effectively certain information must be provided at the initiation of the appeal. *Eighth Circuit Rule 3B directs each civil appellant to: (1) file a completed Appeal Information Form A with the Notice of Appeal at the time the Notice is filed with the District Court clerk and (2) forward a copy of the completed Form A and a copy of Appeal Information Form B to the appellee for completion.* Appellee may complete Form B and send it to the clerk of the Court of Appeals. If you have any questions about the Prehearing Conference Program or the Appeal Information Forms, please contact Mr. Martin at (314)-539-3669.

Forms A and B are available from the District Court clerk and the Court of Appeals clerk and can be found at the Court of Appeals' web site at: www.ca8.uscourts.gov

*June 1, 2000*

Forms/8thcircuitprehearingconf.wpd