**UNITED STATES DISTRICT COURT**

**DISTRICT OF MINNESOTA**

---

KEYSE G. JAMA, Civil No. 01-1172 (JRT/AJB)

Petitioner,

v.

JOHN ASHCROFT, Attorney General of the United States of America; MICHAEL GARCIA, Assistant Secretary, Bureau of Immigration and Customs Enforcement; SCOTT BANIECKE, Acting Field Director, Bureau of Immigration and Customs Enforcement,

Respondents.

**MEMORANDUM OPINION AND ORDER**

---

Jeffrey J. Keyes and Kevin M. Magnuson, BRIGGS AND MORGAN, 2200 IDS Center, 80 South Eighth Street, Minneapolis, MN, 55402, for petitioner.

Lonnie F. Bryan, Assistant United States Attorney, OFFICE OF THE UNITED STATES ATTORNEY, 600 United States Courthouse, 300 South Fourth Street, Minneapolis, MN 55415; Christine A. Bither and Greg D. Mack, Office of Immigration Litigation, UNITED STATES DEPARTMENT OF JUSTICE, Civil Division, 1331 Pennsylvania Avenue, NW, Room 700S, Washington D.C., 20530, for respondents.

Petitioner Keyse Jama filed a petition for a writ of habeas corpus, seeking an order that would bar the government[1] from deporting him to Somalia. Jama initially sought a

---

[1] Maintaining consistency with previous orders in this case and to avoid confusion, the Court will continue its practice of referring to the organization formerly known as the Immigration and Naturalization Service ("INS"), now known as the Bureau of Immigration and Customs Enforcement ("BICE") as "INS (k/n/a BICE)."

FILED JAN 12 2004
RICHARD D. SLETTEN, CLERK
JUDGMENT ENTD. ____
DEPUTY CLERK ____

ruling that he could not be removed to Somalia because the country has no functioning government, and later he amended his petition to include a request for release pending his removal.

Addressing Jama's first contention, this Court interpreted 8 U.S.C. § 1231(b)(2), and concluded that the statute required the INS (k/n/a BICE) to establish that Somalia would accept Jama's return prior to removing him to that country. A divided panel of the Eighth Circuit disagreed, and determined that the INS (k/n/a BICE) could deport petitioner to Somalia. *Jama v. I.N.S.*, 329 F.3d 630 (8th Cir. 2003). Shortly thereafter, the Ninth Circuit reached the opposite result and enjoined the INS (k/n/a BICE) from deporting the vast majority of Somali deportees to Somalia. *Ali v. Ashcroft*, 346 F.3d 873 (9th Cir. 2003). After the Eighth Circuit's decision on this question of statutory interpretation, this Court addressed Jama's argument for release under *Zadvydas v. Davis*, 533 U.S. 678 (2001). The Court determined that Jama was not deportable in the "reasonably foreseeable future" and that his continued detention was therefore constitutionally suspect and was not authorized by statute. The Court ordered Jama released. The INS (k/n/a BICE) then indicated it would remove petitioner immediately. At Jama's request, this Court stayed any action in the case, to afford petitioner an opportunity to seek relief in the Eighth Circuit, and to finalize and file his petition for certiorari in the United States Supreme Court.

Jama filed his petition for certiorari on November 4, 2003, and requested that the Eighth Circuit withdraw or stay its mandate. On November 10, 2003, the Eighth Circuit granted Jama's motion to recall the mandate, and the Circuit ordered the mandate stayed

"until the Supreme Court of the United States takes action on Mr. Jama's petition for certiorari."

Jama then filed a letter request with this Court, requesting that he be released immediately under appropriate conditions of supervision. The government responded, arguing that Jama's request must be denied because the statutory 90-day removal period has not yet run. Although Jama has been in INS (n/k/a BICE) custody for nearly three years, the government suggests that "by his conspiring or acting to prevent his removal from the United States to Somalia, he has caused the length of his removal period to be extended." *See* Letter from Jacqueline R. Dryden dated November 14, 2003. The government also argued that Jama should not be released, because if the Eighth Circuit and/or United States Supreme Court ultimately rule in its favor, Jama would then be immediately deportable, and the government's expense of resources to locate Jama at that time would be a needless waste of resources. Finally, the government suggests that Jama's release presents a danger to the community.

Both parties have filed numerous documents with the Court in support of their respective positions.[2] The Court has carefully studied the entire record, and, for the reasons discussed below, finds that Jama's continued detention is not merited or authorized. The Court therefore orders Jama released no later than 10:00 am on Monday,

[2] For the purposes of the instant motion, the Court takes as true the documented evidence presented by the government, therefore the Court finds that an evidentiary hearing is unnecessary.

January 19, 2004.[3] Such release shall be under reasonable conditions of supervision, as discussed below.

## RELEVANT BACKGROUND[4]

Jama is an alien from Somalia who was admitted as a refugee to the United States in 1996. In June 1999, Jama got into a fight, and eventually pled guilty to third degree assault. Jama was given an executed prison sentence of one year and one day,[5] with execution stayed on the condition he spend 180 days in jail and cooperate with certain conditions of release. Jama served the 180 days, but then violated the supervised release conditions related to alcohol use. Specifically, the Waseca County District Court determined that Jama had used alcohol, and further that he was unable to refrain from the use of alcohol. The Court revoked his probation, and Jama was committed to the custody of the Commissioner of Corrections for the remainder of his sentence.

The INS (k/n/a BICE) initiated removal proceedings against petitioner, entering a final removal order by May 2001. Jama has been in INS (k/n/a BICE) custody for over three years, and this habeas petition has been open since June 2001.

---

[3] The government requested that the Court stay its Order for three business days to allow the Government to appeal to the Eighth Circuit. Although the Court declines to stay its Order, the Court's allowance of a week before Jama must be released should give the government time to appeal, should the government determine such an appeal is an effective use of its resources.

[4] The facts underlying this habeas petition are familiar to the parties, this Court, and the Eighth Circuit. Therefore, the Court summarizes only those facts relevant to the instant matter.

[5] Minnesota state courts do not impose "suspended sentences."

According to the record before the Court, while in INS (k/n/a BICE) custody, Jama has been held in various institutions. Jama has not always been a model prisoner. Specifically, according to the amended declaration of a BICE employee, petitioner has been involved in thirteen incidents that resulted in disciplinary charges being filed. Petitioner also has spent time in administrative segregation.[6]

On the other hand, Jama has exhibited positive behavior in many instances, and has received accolades from various individuals.[7] For example, in a letter to petitioner's counsel, an instructor from a detention facility in which Jama was held notes that Jama "is enrolled in several classes . . . and does excellent work." That instructor noted that Jama "has an excellent attitude and really works hard . . . Mr. Jama gets along very well with his fellow residents and with all of the staff and this is very commendable since we have over fifteen different cultures represented here." Another instructor noted that "Jama has been a regular attendee in our school since he arrived here . . . He has pursued his interests in [academic subjects]. He has met all expectations regarding behavior towards peers and staff." Jama was also "an active participant in [] education classes at MCR-RC." A teacher at that facility noted, "Jama realizes the importance of improving himself educationally . . . and has met behavior expectations during his time in class and

[6] *See* Supplemental Declaration of Scott Baniecke, dated Nov. 13, 2003. Attached as Exhibit A to Letter from Greg D. Mack dated Nov. 19, 2003.

[7] The following information can by found in Exhibit D attached to the November 18, 2003 letter of Kevin M. Magnuson.

continues to be an active participant in classes." Jama also reports that he participates in alcohol rehabilitation classes or groups.[8]

## DISCUSSION

### I. *Zadvydas*

This Court discussed *Zadvydas v. Davis*, 533 U.S. 678, 682 (2001), in its Order of October 24, 2003. In *Zadvydas*, the Supreme Court held that the government could not detain removable aliens indefinitely, even where those aliens had committed serious crimes. 533 U.S. at 682. In reaching this conclusion, the Supreme Court discussed its preventive detention jurisprudence, and noted that preventive detention based on dangerousness is authorized only when limited to "**specially dangerous**" individuals and subject to "**strong** procedural protections." *Id.* at 693 (citing *Kansas v. Hendricks*, 521 U.S. 346, 368 (1997) (upholding scheme that imposes detention upon "a small segment of particularly dangerous individuals" and provides "strict procedural safeguards"))[9]; *United States v. Salerno,* 481 U.S. 739, 747, 750-752 (1987) (in upholding pretrial detention, stressing "stringent time limitations," the fact that detention is reserved for the

[8] The government initially led the Court to believe that Jama did not participate in any rehabilitation, anger management or skill classes while in criminal or INS (n/k/a BICE) custody. The Court surely need not remind counsel that its first obligation is to administer justice. The administration of justice is better served by frank recitation of the underlying facts, than by any attempt to mislead the Court. The government's assertion that petitioner "stabbed three people" and its too-frequent references to terrorism fall into this latter category and are not useful to the resolution of this matter. Further attempts by the government to mislead the Court will result in sanctions.

[9] Parentheticals quoted from *Zadvydas*. *Id.* at 693.

"most serious of crimes," the requirement of proof of dangerousness by clear and convincing evidence, and the presence of judicial safeguards), *with Foucha v. Louisiana,* 504 U.S. 71, 81-83 (1992) (striking down insanity-related detention system that placed burden on detainee to prove nondangerousness).

The petitioners in *Zadvydas* were resident aliens who had lived in the United States and were to be deported because each had committed serious crimes. *Zadvydas.* 533 U.S. at 684-85. In fact, one involved a homicide. The Court did not focus on the nature of the crimes, but reasoned that in determining whether continued detention is "reasonable" the habeas court "should measure reasonableness primarily in terms of the statute's basic purpose, namely, assuring the alien's presence at the moment of removal." *Id.* at 699.

**A. 90-day Removal Period**

The Court incorporates its discussion of the 90-day removal period from its Memorandum Opinion and Order of October 24, 2003. In sum, the Court found that Jama did not "act to prevent his removal" as that term has been understood in this district. The Court determined that the 90-day detention period had long since run. The government has presented no new argument on this issue. Instead, the government continues to argue that Jama has acted to prevent his removal. At the risk of repeating itself, the Court again notes that Jama has asked for review of a pure question of law, *Jama*, 329 F.3d at 633, such a request "is not a typical request for review of the merits of a removal order." *Farah v. Immigration and Naturalization Service*, 2003 WL 221809,

No. Civ. 02-4724 at *4 (D. Minn. Jan. 29, 2003) ("the filing of a habeas petition on the basis of a pure question of law does not qualify as conspiring or acting to prevent his removal, acts which would restart the 90-day removal period"); *see also Omar v. Immigration and Naturalization Service*, 2003 WL 1856432, No. Civ. 02-1387 (D. Minn. April 8, 2003) (agreeing with *Farah*). *See also Arevalo v. Ashcroft*, 260 F. Supp. 2d 347, 349-51 (D. Mass. 2003) (holding that alien who filed habeas petition and was granted stay of removal had "simply exercised her statutory rights" and had not acted to prevent removal).

The government urges that "Congress could not have intended that Jama benefit from his own conduct by obtaining release under these circumstances," and argues that continued detention is justified due to Jama's "nefarious" litigation strategy. The Court cannot condone terming "nefarious" the request for judicial review on a question of statutory interpretation premised on constitutional principles. *See Zadvydas*, 533 U.S. at 692 (noting that "once an alien enters the country, the legal circumstance changes, for the Due Process Clause applies to all 'persons' within the United States, including aliens"); *see also* Molly Mcginty Borg, *Freedom from the Deprivation of Liberty: The Supreme Court Imposes Limitations on Indefinite Detention of Criminal Aliens,* Zadvydas v. Davis, 29 Wm. Mitchell L. Rev. 951, 971-73 (2003) (noting the *Zadvydas* holding rested on statutory interpretation, and discussing constitutional implications and the theory of constitutional avoidance). Simply stated, there is nothing "nefarious" about judicial review, and certainly nothing nefarious about petitioning the Supreme Court to resolve a legal question that has sharply divided two circuits of the United States Courts of

Appeals. *Compare Jama v. INS*, 329 F.3d 630 (8th Cir. 2003) (holding that the government can deport individuals to Somalia), *with Ali v. Ashcroft*, 346 F.3d 873 (9th Cir. 2003) (reaching opposite result, and enjoining INS from deporting class of aliens to Somalia); *see also Fay v. Noia*, 372 U.S. 391, 401-02 (1963) (noting that "government must always be accountable to the judiciary for a man's imprisonment"). This is especially true where "administrative detention" has gone on for over three years. To paraphrase another federal district court, continued detention based on the exercise of legal rights is both illogical and fundamentally unfair. *Arevalo v. Ashcroft*, 260 F. Supp. 2d 347, 350 (D. Mass. 2003).

**B. Specialized Showing of Dangerousness**

It is therefore beyond question that continued detention cannot be justified on Jama's decision to file a petition of certiorari. Continued detention, in this particular case, is also not justified on the "strong showing" of "special dangerousness" the *Zadvydas* Court contemplated. The Court outlined Jama's underlying offense, and his disciplinary record above. While the Court certainly does not condone any type of misbehavior in prison, the government has not shown that Jama is mentally unstable,[10]

[10] *See Kansas v. Hendricks,* 521 U.S. 346 (1997) (upholding Kansas' Sexually Violent Predator Act, which established procedures for the civil commitment of persons who, due to a "mental abnormality" or a "personality disorder," were likely to engage in "predatory acts of sexual violence"); *see also Foucha v. Louisiana*, 504 U.S. 71 (1992) (holding that Louisiana statute allowing continued confinement of insanity acquittee on basis of his antisocial personality, after hospital review committee had reported no evidence of mental illness and recommended conditional discharge, violated due process).

that he presents a unique risk of recidivism,[11] or that he has any connection to terrorist organizations.[12] Nor does the underlying offense establish that Jama remains a danger to the community. *Chi Thon Ngo v. I.N.S.*, 192 F.3d 390, 398 (3rd Cir. 1999) (presenting danger to the community at one point by committing crime does not place individuals forever beyond redemption).[13]

Jama's behavior in prison, including the recent disturbance during which Jama smeared his own feces on the interior of his cell, do not show that Jama presents an intolerable risk of danger to our community. The Court notes the frustration and feelings of powerlessness and mental anxiety that petitioner articulates are reasonable, given his continued indefinite detention. The detention has continued years beyond the completion of his sentence for the crime to which he pled guilty, and months after this Court granted his petition for habeas corpus and ordered him released. His more recent actions in prison, including a hunger strike, and his wavering before filing his petition for certiorari,

[11] *See United States v. Salerno,* 481 U.S. 739, 747 (1987) (rejecting facial challenge to statute authoring pretrial detention where the statute carefully limited the circumstances under which detention could be sought to those involving the most serious of crimes, such as crimes of violence, offenses punishable by life imprisonment or death, serious drug offenses, **or certain repeat offenders**).

[12] *See Zadvydas*, 533 U.S. at 691-92 (noting that the "provision authorizing detention does not apply narrowly to 'a small segment of particularly dangerous individuals,' say, suspected terrorists" and "Neither do we consider terrorism or other special circumstances where special arguments might be made for forms of preventive detention and for heightened deference to the judgment of the political branches with respect to matters of national security.") (internal citation omitted).

[13] Indeed, Jama's offense, while serious, is certainly far less serious than those committed by one of the petitioners in *Zadvydas*.

are no less difficult to comprehend.[14] In sum, while the government has demonstrated that Jama is frustrated, at times despondent, and at times desperate to gain the attention of those he believes have the power to release him, the government has not come close to meeting the burden to continue to detain petitioner on the basis of a specialized showing of dangerousness.

The government has presented no evidence that Jama presents a flight risk. Jama has relatives in the Minneapolis area, and has become somewhat well known in the Somalian community here. Jama has demonstrated that he has a place to stay upon his release, and that he has arranged legal employment in a warehouse. Petitioner has articulated, through counsel, that he understands that if the Supreme Court denies his petition, he likely will be immediately deportable. In fact, he has even requested that if he is to be deported to Somalia, he be sent to a particular location, Bosasso, that is less dangerous for members of his tribe.[15]

The Court is compelled to reiterate yet again that this is a civil proceeding, and is intended to be nonpunitive in nature. For far too long Jama has been held, primarily with the general prison population, in a state correctional institution. The government has not

---

[14] Counsel for Jama reports that the government has pressured him to abandon his right to seek judicial review. Regardless of whether this extremely inappropriate behavior has occurred, the Court is concerned that the prolonged civil commitment in this case has become so lengthy and punitive that Jama will feel required to drop his case.

[15] *See* Transcript from telephone conference held October 26, 2003, at 9-11 [Docket No. 78]. Petitioner expressed his conviction that he would be killed if he was deported to Hargeysa, in Somaliland, where the government indicated he would be deported before the Court interposed its stay of October 26, 2003.

shown that Jama is exceptionally dangerous, or presents an intolerable risk of flight. Therefore, due process mandates that Jama be released with appropriate conditions.[16]

**ORDER**

Based on the foregoing, the submissions of the parties, and all of the files, records, and proceedings herein, the Court **GRANTS** petitioner's letter request [Docket No. 71].

Accordingly, **IT IS HEREBY ORDERED** that respondent is to release petitioner under reasonable supervised release conditions by no later than 10:00 a.m. on Monday, January 19, 2004.

DATED: January 12, 2004
at Minneapolis, Minnesota.

JOHN R. TUNHEIM
United States District Judge

[16] The Court is aware that it has no power to set the conditions of release. Nonetheless, the Court encourages the adoption of a set of conditions to ensure that Jama will not become a danger to the community or a flight risk. In particular, the Court encourages a requirement that Jama continue alcohol treatment and/or support groups, and be required to abstain from any use of alcohol.