UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA
Civil No. 01-1172 JRT/AJB

---

**KEYSE JAMA,**

**Petitioner,**

**v.**

**IMMIGRATION AND CUSTOMS ENFORCEMENT,**

**Respondent.**

---

**Respondent's Response To Petitioner's Emergency Motion To Compel Removal Or Release**

---

## INTRODUCTION

Respondent United States Immigration and Customs Enforcement ("ICE") hereby responds to Petitioner's motion for release of Petitioner Keyse Jama.[1] In support of the motion, Jama asserts that removal to Somalia is not reasonably foreseeable and that ICE's efforts to remove Jama to Somalia may be unlawful. Jama is wrong.

ICE is working to effect Jama's removal to Somalia within the reasonably forseeable

[1] Petitioner filed the instant habeas petition against the Immigration and Naturalization Service ("INS"). On March 1, 2003, the functions of the former INS were transferred from the Department of Justice to three bureaus (United States Immigration and Customs Enforcement ("ICE"), United States Customs and Border Protection, and United States Citizenship and Immigration Services) in the newly formed Department of Homeland Security ("DHS"). See Homeland Security Act of 2002, Pub. L. No. 107-296, 116 Stat. 2135 (Nov. 25, 2002). At present, Petitioner is detained by the ICE.

future. Specifically, upon the Supreme Court's decision on January 12, 2005, ICE begin the process of first attempting to arrange for Jama's removal through a commercial airline carrier from the United States to Somalia. Jama's own counsel declined to pursue that option because of concerns they had with securing a passport to board a commercial flight on Daallo Airlines. Upon Jama's counsel's rejection of pursuing a passport for him, ICE began the process of arranging for his removal through a commercial flight from the United States to Nairobi, Kenya, and then a charter flight from Nairobi to Bossasso. See ICE Declaration of Acting Deputy Assistant Director John Tsourkaris, attached hereto at Exhibit 1. ICE has taken several steps in that regard, and it believes that it can effect Jama's removal within next five weeks. See id.

The Supreme Court's decision was issued on January 12, 2005, and its judgment became final on February 14, 2005. The Eighth Circuit issued its mandate to this Court on March 1, 2005. The Eighth Circuit's recall of its mandate on November 10, 2003, prevented Jama's removal until the mandate issued. Jama could not be removed by his own actions. He chose to bar execution of the order of removal by filing a motion to recall the mandate. The Eighth Circuit granted his motion to recall the mandate. ICE's intent, together with the steps it has taken to fulfill that intent, is to remove Jama within the next five weeks, or, put another way, less than 90 days after the Supreme Court's February 14, 2005 judgment and the Eighth Circuit's recall of its mandate. Previously, the Eighth Circuit concluded that Jama could be removed within the reasonably forseeable future before the Supreme Court ruled. See Jama v. INS, 362 F.3d 1117 (8th Cir. 2004). A fortiori, Jama can be removed within the reasonably foreseeable future after the Supreme Court ruled against him. Accordingly, Jama's detention since the Eighth Circuit's mandate issued on March 1, 2005, does not violate Zadvydas v. Davis, 533 U.S. 678 (2001).

Finally, Jama's claim that removal efforts may be unlawful rests on his alleged concerns about being removed on a Somali passport. Jama has rejected removal pursuant to a passport and the government no longer intends to use a passport to remove him to Somalia.

## FACTUAL AND PROCEDURAL BACKGROUND

### I. Statement of the Case.

After stabbing three individuals with a knife, see Exhibit 2, Jama is subject to removal because he committed a crime involving moral turpitude, to wit an assault offense, which rendered him removable under 8 U.S.C. § 1182(a)(2)(A)(i)(I).[2] Jama's order of removal became final on May 9, 2001, when the Board of Immigration Appeals ("Board") dismissed his appeal of the Immigration Judge's order of removal to Somalia. Jama did not pursue a petition for review in the court of appeals of this decision. Rather, he waited until after the former INS issued him a May 25, 2001 warrant for his removal to file a petition for a writ of habeas corpus in this Court on June 28, 2001. On March 31, 2002, the Court granted Jama's petition for a writ of habeas corpus, and enjoined his removal to Somalia. Specifically, the Court directed that Jama not be removed from the United States until the government of the country to which he is to be removed has agreed to accept him and upon further order of this Court. On August 1, 2002, over the government's objections, the Court permitted Jama to amend his habeas petition and assert a request for release under Zadvydas.

On May 27, 2003, the Eighth Circuit reversed this Court's decision. See Jama v. INS, 329 F.3d 630 (8th Cir. 2003). The Eighth Circuit concluded that the plain language of section 8

---

[2] Except where the government attaches an exhibit, the factual background is based on the certified administrative record on file with the Court.

U.S.C. § 1231(b)(2)(E)(iv) did not impose any requirement that the United States obtain the acceptance of the government of the country of removal. See Jama, 329 F.3d at 634 ("Our careful review of the statute reveals that, as a matter of simple statutory syntax and geometry, the acceptance requirement is confined to clause (vii), and does not apply to clauses (i) through (vi).").

On June 4, 2003, Magistrate Judge Boylan recommended that Jama's amended habeas petition regarding release from detention be denied. On August 13, 2003, the Eighth Circuit's mandate issued. On August 28, 2003, the Eighth Circuit denied Jama's motion to recall the mandate. On October 24, 2003, the Court ordered the government to release Jama. On that same date, the government informed the Court and Jama that it intended to remove Jama to Somalia. On October 26, 2003, Jama filed another motion to recall the mandate with the Eighth Circuit. On that same date, Jama filed a motion to stay removal pending the Eighth Circuit's review of his second motion to recall the mandate. The Court granted Jama's motion for a stay of removal on the same date.

On November 4, 2003, Jama filed a petition for a writ of certiorari in the Supreme Court. On November 10, 2003, the Eighth Circuit granted Jama's second motion to recall the mandate, and stayed the mandate until the Supreme Court takes action on his petition for a writ of certiorari. On January 12, 2005, the Supreme Court affirmed the Eighth Circuit's May 2003 decision. On February 14, 2005, the Supreme Court's judgment issued. On March 1, 2005, the Eighth Circuit issued its mandate.. Specifically, the Supreme Court held that 8 U.S.C. § 1231(b)(2)(E)(iv) did not require the United States to obtain explicit, advance assent to an alien's return. On March 4, 2005, the Eighth Circuit's mandate and judgment were spread upon this

Court's docket, and the case was remanded with instructions to conduct further proceedings consistent with the May 2003 opinion of the Eighth Circuit. On March 4, 2005, Jama filed the instant motion.

We provide this procedural background because it is absent from Petitioner's motion and memorandum, as is a statement of this Court's jurisdiction to consider the instant motion.

**II. ICE's Efforts To Effect Jama's Removal.**

Upon Jama's counsel's decision to reject pursuing Jama's removal pursuant to a passport, which would facilitate his transport to Somalia on Daallo Airlines, ICE began working on effecting his removal through a commercial flight to Kenya and then a charter flight to Somalia. See ICE Declaration at ¶¶ 4, 10. At present, ICE is working with RMI Security to arrange for Jama's transit into Somalia. See id. at ¶¶ 11, 12. RMI Security has informed ICE that it needs to contact individuals in Puntland to arrange for the arrival of a flight at a landing strip in Puntland. See id. at ¶ 12. ICE foresees that it will hear from RMI Security regarding such arrangements within a week. See id. Once RMI Security is able to determine all of its requirements and conditions for Jama's transit into Somalia, ICE plans to finalize Jama's removal through a contract with RMI Security. See id. at ¶ 13. According to ICE, barring any unforeseen operational obstacles, Jama will be removed within the next five weeks. See id. at ¶ 3, 14.

Regarding the request that Jama's counsel consider obtaining a passport for Jama's transit into Somalia on Daallo Airlines, ICE states that Daallo Airlines requires a travel document for transit into Somalia. See id. at ¶ 8. In addition, ICE reports that while the United States does not recognize travel documents issued by Somalia for purposes of admission into the United States or identification, other countries do recognize such documents. See id. at ¶ 7. Accordingly, on

behalf of ICE, the undersigned counsel provided to Jama's counsel a list of countries from which he could pursue obtaining a Somali passport and instructed him to consider contacting Daallo Airlines to ascertain what documents it needed for transit into Somalia.

## ARGUMENT

In Zadvydas, the Supreme Court construed 8 U.S.C. § 1231(a)(6), and concluded that the government's authority to detain aliens, in the absence of special circumstances, could be sustained when an alien's removal was reasonably foreseeable. See 533 U.S. at 699-700. Further, the Supreme Court placed a presumptively valid temporal limitation of six months on the government's detention authority. See 533 U.S. at 701. Thereafter, an alien could obtain release only if he demonstrated that there was no significant likelihood of his removal in the reasonably foreseeable future. Cf. Zadvydas, 533 U.S. at 695 ("[T]he issue we address is whether aliens that the Government is unable to remove are condemned to indefinite detention."). In addition, once legal impediments to removal are extinguished, e.g., the issuance of the Eighth Circuit's mandate, the government has an unimpeded period of 90 days to effect the alien's removal, and detention is mandatory during that 90-day period. See 8 U.S.C. § 1231(a)(1) & (2). Thereafter, under Zadvydas, the government has an additional 90 days to detain Jama and effect his removal. As noted above, the government is endeavoring to effect Jama's removal well within section 1231(a)(2)'s and Zadyvdas's timetable.

Further, the Eighth Circuit has previously rejected Jama's request that he be released pending consideration of his petition for a writ of certiorari by the Supreme Court. See 362 F.3d at 1117. Specifically, the Eighth Circuit concluded that this Court "erred in concluding that 'there is no significantl likelihood of removal in the reasonably foreseeable future'" because "[t]he

United States Supreme Court has granted certiorari in Mr. Jama's immigration case, and we believe that the Court will decide the case in a reasonable time and that it would be wrong to conclude that there is no significant likelihood that the government will prevail." Id. Jama's petition for a writ of certiorari was pending from November 4, 2003 (filed) to February 14, 2005 (judgment entered). Thus, this constituted a "reasonable [period of] time" for Jama to be detained pending review by the Supreme Court. Now that the Supreme Court has affirmed the Eighth Circuit's decision and, as noted above, ICE intends to remove Jama within five weeks, Jama's continued detention pending removal after the Supreme Court's judgment is reasonable under Zadvydas.

Jama has contested his removal on five occasions and has secured judicial relief to thwart removal on three occasions (June 2001 habeas petition; March 2002 injunction against removal; August 2003 motion to recall the mandate; October 26, 2003 motion to this Court to stay removal pending motion to recall the mandate; October 26, 2003 motion to Eighth Circuit to recall the mandate; October 26, 2003 order from this Court granting stay of removal; November 2003 order from Eighth Circuit recalling the mandate, at Jama's request). Now, it is apparently Jama's contention that he should have been removed on January 12, 2005, moments after the Supreme Court issued its decision, and that detention beyond that point is unlawful under Zadvydas. In addition, he questions the government's ability to remove him altogether, and therefore urges the Court to release him from detention.

Jama entered custody in May 2001, but his decision to secure injunctions and orders against his removal precluded removal during those periods when there were legal impediments to his removal, i.e., from March 31, 2002 (this Court's injunction) to August 13, 2003 (Eighth

Circuit's mandate issued); October 26, 2003 (this Court's stay after government informs the Court and Jama of intent to remove him) to March 4, 2005 (Eighth Circuit re-issues its mandate after it had recalled the mandate, at Jama's request, on November 10, 2003). Further, the Eighth Circuit rejected this Court's conclusion that Jama has been held in detention for two years, and that the presumptively valid period for detention in Zadvydas had long since passed. See Jama v. Ashcroft, 362 F.3d at 1117 (reversing district court's order releasing Jama). Thus, Jama's claim that the six-month presumptive removal period has long since passed, see Petitioner's Memoradum at 2, not only is without merit, it has already been rejected by the Eighth Circuit. Moreover, where Jama has made it clear that he refuses removal to anyplace in Somalia other than Bossasso and the government is endeavoring to accommodate and facilitate his expressed desire of a specific location for removal, Zadvydas cannot dictate that he should be released pending the government's efforts to effect removal

ICE efforts, which predate the issuance of the Eighth Circuit's mandate and any further order of this Court in response to the mandate, will resolve practical issues regarding Jama's removal. Zadvydas states that detention is not indefinite and therefore unlawful, where removal will occur in the reasonably foreseeable future. ICE intends to remove Jama within the next five weeks. See ICE Declaration at Exhibit 1. Accordingly, contrary to Jama's claims, he can be removed, and ICE is working expeditiously to effect his removal.

Regarding Jama's contentions about obtaining a passport, the government is no longer, after his objection to acquiring a passport, pursuing Jama's removal via a passport that would satisfy Daallo Airlines's requirements. In addition, Jama's counsel was not instructed to obtain a false or illegal passport. Rather, he was informed that Daallo Airlines now requires a passport

for travel to Somalia, he was provided with two contacts which ICE believed could facilitate access to a Somalian passport, and it was noted that he might want to directly contact Daallo Airlines about what their requirements were for travel. Jama's counsel has apparently uncovered facts that led him to conclude that he should not pursue a passport for his client, and the government has moved on to effecting Jama's removal through other means.

## CONCLUSION

Respondent respectfully requests that the Court deny Petitioner's motion to compel removal or release.

Respectfully submitted,

PETER D. KEISLER
Assistant Attorney General

DAVID J. KLINE
Principal Deputy Director

s/Lonnie F. Bryan for
GREG D. MACK
Senior Litigation Counsel
Office of Immigration Litigation
Civil Division
U.S. Department of Justice
P.O. Box 878
Ben Franklin Station
Washington, D. C. 20044
Telephone: (202) 616-4858

Date: March _8_, 2005

Attorneys For Respondent