**UNITED STATES DISTRICT COURT**

**DISTRICT OF MINNESOTA**

---

KEYSE G. JAMA,

Petitioner,

v.

IMMIGRATION AND CUSTOMS ENFORCEMENT,

Respondents.

Civil No. 01-1172 (JRT/AJB)

**MEMORANDUM OPINION AND ORDER**

---

Jeffrey J. Keyes and Kevin M. Magnuson, **BRIGGS AND MORGAN**, 2200 IDS Center, 80 South Eighth Street, Minneapolis, MN, 55402, for petitioner.

Greg D. Mack, Office of Immigration Litigation, **UNITED STATES DEPARTMENT OF JUSTICE**, Civil Division, 1331 Pennsylvania Avenue, NW, Room 700S, Washington, D.C., 20530; Lonnie F. Bryan, Assistant United States Attorney, **OFFICE OF THE UNITED STATES ATTORNEY**, 600 United States Courthouse, 300 South Fourth Street, Minneapolis, MN 55415, for respondents.

**BACKGROUND**

The INS (n/k/a ICE)[1] entered a final removal order against petitioner Keyse Jama in May 2001. Jama did not challenge the determination that he was removable, but filed a petition for a writ of habeas corpus seeking an order that would bar the government

---

[1] Maintaining consistency with previous orders in this case and to avoid confusion, the Court will continue its practice of referring to the organization formerly known as the Immigration and Naturalization Service ("INS"), now known as Immigration and Customs Enforcement ("ICE") as "INS (n/k/a ICE)."

from deporting him to Somalia. Jama initially sought a ruling that he could not be removed to Somalia because the country has no functioning government, and later he amended his petition to include a request for release pending his removal.

This Court interpreted 8 U.S.C. § 1231(b)(2), and concluded that the statute required the INS (n/k/a ICE) to establish that Somalia would accept Jama's return prior to removing him to that country. A divided panel of the Eighth Circuit disagreed, and determined that the INS (n/k/a ICE) could deport petitioner to Somalia. *Jama v. I.N.S.*, 329 F.3d 630 (8th Cir. 2003). The mandate issued in August 2003. Subsequently, this Court addressed Jama's argument for release under *Zadvydas v. Davis*, 533 U.S. 678 (2001). The Court determined that Jama was not deportable in the "reasonably foreseeable future," and that his continued detention was therefore constitutionally suspect and not authorized by statute, and ordered Jama released within three days of the Order. *Jama v. Ashcroft*, 2003 WL 22427839 (D. Minn. Oct. 24, 2003). However, Jama was never released in accordance with this Order.

Jama filed a petition for certiorari on November 4, 2003, and requested that the Eighth Circuit withdraw or stay its mandate. On November 10, 2003, the Eighth Circuit granted Jama's motion and ordered the mandate stayed until the Supreme Court of the United States took action on Jama's petition for certiorari.

Upon Jama's request, this Court again determined that *Zadvydas* required Jama's release and ordered that he be released under appropriate conditions of supervision pending action by the Supreme Court. *Jama v. Ashcroft*, 2004 WL 67658 (D. Minn. Jan. 12, 2004). The Supreme Court granted certiorari in Jama's case on February 23,

2004. On March 25, 2004, a divided panel of the Eighth Circuit determined that, in light of the grant of certiorari, Jama's detention did not violate *Zadvydas* and overturned the order of release. *Jama v. Ashcroft*, 362 F.3d 1117 (8th Cir. 2004). On January 12, 2005, the United States Supreme Court denied Jama's petition. *Jama v. ICE*, 125 S. Ct. 694 (2005).

Currently before the Court is Jama's motion to compel removal or release pursuant to *Zadvydas*. Although the Eighth Circuit previously determined that, due to the imminent nature of the Supreme Court proceedings, *Zadvydas* did not require Jama's release at that time, the Court agrees that *Zadvydas'* mandate must be reconsidered in the context of the current circumstances.

## ANALYSIS

When a final order of removal has been entered against an alien, the government must facilitate that alien's removal within a 90-day "removal period." *See* 8 U.S.C. § 1231(a)(1). During this removal period, the government must detain that alien until he or she is actually removed. *See id.* at § 1231(a)(2). In situations where removal cannot be accomplished within 90 days,[2] detention beyond the removal period is authorized by § 1231(a)(6), which provides:

---

[2] An exception to the 90-day requirement is provided in 8 U.S.C. § 1231(a)(1)(C), which states:

> The removal period shall be extended beyond a period of 90 days and the alien may remain in detention during such extended period if the alien fails or refuses to make timely application in good faith for travel or other documents necessary

(Footnote continued on next page.)

> An alien ordered removed who is .. . removable .. . [for committing a criminal offense] or who has been determined by the Attorney General to be a risk to the community or unlikely to comply with the order of removal, may be detained beyond the removal period and, if released, shall be subject to the terms of supervision in paragraph (3).

*Id.* at § 1231(a)(6).

The government's ability to detain an alien pursuant to § 1231(a)(6) is not unlimited, however. In *Zadvydas*, the Supreme Court held that, in order to avoid a "serious constitutional threat," § 1231(a)(6) must be construed as limiting an alien's post-removal-period detention to the period reasonably necessary to remove the alien from the

---

(Footnote continued.)

> to the alien's departure or conspires or acts to prevent the alien's removal subject to an order of removal.

The Court notes that Jama's continued detention is not authorized by this exception. INS (n/k/a ICE) requested that Jama obtain a Somali passport in order to effectuate his deportation via commercial air flights. Jama's counsel investigated the request, following up with each of the sources provided by INS (n/k/a ICE), and determined that no authority exists which is able to issue a Somali passport. (Magnuson Aff. ¶¶ 9-13.) Thus, Jama cannot be said to have improperly failed or refused to secure necessary documents. Additionally, the Court has previously noted that Jama's exercise of his legal rights does not qualify as conspiring or acting to prevent his removal. *Jama*, 2003 WL 22427839, at *2-3.

The Court also observes that the government's request that Jama secure a "passport" from apparently extra-legal sources is highly irregular. The Court notes that Somalia still does not have a functioning central government such as would normally issue passports. Although the government asserts that some unidentified entity is issuing Somali passports that some unidentified authorities are willing to accept, and that such passports are therefore not "illegal" or "false," the government admits that the United States neither recognizes a Somali government nor accepts such documents. (Tsoukaris Decl. at ¶ 7.) This Court joins the Western District of Washington's concern that the government not facilitate or encourage the use of illegitimate documents, (*see* Magnuson Decl. Ex. L), and condemns the use of any extra-legal means or methods to accomplish deportation. The Court also notes that the government's instruction that Jama obtain one of these questionable documents runs counter to the spirit, if not the letter, of the Western District of Washington's direction that the government refrain from representing to Somali detainees that legitimate documents could be obtained that would facilitate removal or from providing any such documents. *See id.*

United States. 533 U.S. at 699; *see also Clark v. Martinez*, 125 S. Ct. 716 (2005) (reiterating that, under *Zadvydas*, § 1231(a)(6) authorizes detention not until the detention approaches constitutional limits, but only for a period consistent with the purpose of effectuating removal). The Court determined that a presumptively reasonable period of post-removal detention is limited to six months. *Zadvydas*, 533 U.S. at 699. If, after six months, an alien provides good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future, the government must respond with evidence sufficient to rebut that showing. *Id*. There is no fixed time which constitutes the "reasonably foreseeable future;" but, as the period of prior post-removal-period confinement grows, the amount of time considered the "reasonably foreseeable future" shrinks. *Id*. "Once removal is no longer reasonably foreseeable, continued detention is no longer authorized by [§ 1231(a)(6)]," and the alien must be released, subject, of course, to appropriate conditions. *Id.* at 699-700.

Release is required because, under the Due Process clause of the Fifth Amendment to the United States Constitution, continued detention in a civil matter is impermissible except in "certain special and narrow nonpunitive circumstances where a special justification, such as harm-threatening mental illness, outweighs the individual's constitutionally protected interest in avoiding physical restraint." *Id*. at 690 (internal quotations and citations omitted). Neither ensuring an alien's availability for deportation at some unidentified, remote time in the future, nor an ordinary concern that the alien may, because of past behavior, present a danger to the community provides the requisite special justification. *Id.* at 690-91. The Court in *Zadvydas* emphasized that preventive

detention must be limited to "specially dangerous individuals," *id.* at 691, and upheld the possibility of release of a former gang-member convicted of manslaughter and a drug dealer with a history of flight, *see id.* at 684-85.

In the case at hand, Jama's post-removal-period detention is now in its forty-seventh month.[3] As this Court has noted before, the 90-day statutory period and six-month *Zadvydas* period have long since passed. *See Jama*, 2003 WL 22427839, at *2-3. Jama has presented evidence that the government is having significant difficulty arranging for his deportation. Over the past several years, the government has proposed elaborate, but ultimately unsuccessful, plans to deport Jama including contracting with an unidentified foreign contractor who would in turn contract with a warlord in the Somali territory to accomplish the relocation. *See id.* More recently, the government has been forced to abandon plans to deport Jama via commercial air flights because passengers are required to present a valid passport which Jama does not have and cannot obtain, and because very few flights fly directly to Bossasso, Somalia rather than passing through Mogadishu or Hargeysa, areas which are unsafe for Jama. (Tsoukaris Decl. ¶¶ 5-9; Magnuson Decl. ¶ 11.) The government now informs the Court that it is pursuing negotiations with a security company in Kenya, who is negotiating with "contacts" near Bossasso to accomplish the relocation. (Tsoukaris Decl. at ¶¶10-13.) Although the

[3] Jama's order of removal became final in May, 2001. Thus, the statutory removal period ended in August, 2001 and the six-month *Zadvydas* period ended in November, 2001. *See Jama*, 2004 WL 67658, at *3; *Jama*, 2003 WL 22427839, at *2-3; *see also Tuan Thai v. Ashcroft*, 366 F.3d 790, 792 (9th Cir. 2004) (opinion granting habeas corpus relief and noting that where order of removal became final on November 1, 2002, petitioner had been in post-removal-period detention for sixteen months on May 3, 2004).

government professes no knowledge of the identity of the "contacts" near Bossasso, the Court observes that this plan sounds suspiciously like the government's previous unsuccessful plan that involved negotiating with Somali warlords who the United States government does not recognize as legitimate authorities.[4] Jama asserts, and this Court agrees, that this "evidence" provides little reason to believe that Jama will be removed in the reasonably foreseeable future. Under the Supreme Court's decision in *Zadvydas*, Jama must be released unless the government provides additional evidence that his removal will, in fact, take place in the "reasonably foreseeable future."

It is the Court's duty to determine the contours of the "reasonably foreseeable future." *Zadvydas*, 533 U.S. at 699-700. The Supreme Court has directed that "for detention to remain reasonable, as the period of prior postremoval confinement grows, what counts as the 'reasonably foreseeable future' conversely would have to shrink." *Id.* at 701. Additionally, the government is not entitled to an unlimited number of chances to effect Jama's deportation. *Id*. at 702 (rejecting the argument that detention is lawful as long as good faith efforts to effectuate deportation continue). Jama has been in detention for some forty-seven months, while the government has made several unsuccessful attempts to piece together a deportation plan. The Court therefore believes that the "reasonably foreseeable future" is necessarily very short.

[4] Additionally, the Court notes with concern that although the government has been informed by Daallo Airlines that it will require a passport for any Somali traveling to Somalia, because authorities in Somalia now require a Somali passport for Somalis entering Somalia, (*see* Tsoukaris Decl. at ¶ 6), the government has not explained how this hurdle can be overcome merely by using a private transport company rather than a commercial airline.

Nevertheless, the Court recognizes that the Eighth Circuit's withdrawal of their mandate and the Supreme Court's consideration of this case effectively required the INS (n/k/a ICE) to suspend its efforts to deport Jama. The government is therefore entitled to some period of time to reestablish contacts or arrangements that it had previously made in order to secure Jama's removal.

The Court finds that 90 days from the date of the Supreme Court opinion denying Jama's petition for writ of certiorari is "a period reasonably necessary to secure [Jama's] removal." *Zadvydas*, 533 U.S. at 699. The Supreme Court's opinion on January 12, 2005, conclusively established that Jama's efforts to avoid removal to Somalia had failed. From that moment, the government was on notice that Jama was deportable and was obligated to begin making every effort to arrange his removal. As the United States Congress has concluded, 90 days should be, in most cases, sufficient time to arrange for an alien's deportation. 8 U.S.C. § 1231(a)(1). In this case, a longer period is not necessary or appropriate, given the nearly four years that Jama has been in detention and the fact that the government is not starting from scratch in making plans for Jama's removal. Therefore, if Jama's removal is accomplished within 90 days of the Supreme Court's opinion, i.e., by April 12, 2005, it will have taken place within the "reasonably foreseeable future."[5] *Zadvydas*, 533 U.S. at 701. In order to ensure that Jama's detention

[5] As noted above, the government represents that it has entered into negotiations with RMI Security, an Irish security company doing business in Kenya, to fly Jama from Kenya to Bossasso. (Tsoukaris Decl. at ¶11.) However, RMI is unwilling to enter a contract until it has successfully secured cooperation from certain unidentified "contacts" who apparently control an airstrip near Bossasso. (*Id.* at ¶¶ 12-13.) The government asserts that such cooperation would be

(Footnote continued on next page.)

does not fall into unconstitutional territory, the Court orders the government to provide the Court a written progress report of its plans for Jama's deportation on Tuesday, April 12, 2005. If Jama has not been deported by that time, the Court will entertain a motion from Jama for his release pending deportation.

This is not a case where, now that all challenges have been exhausted, deportation is imminent because it is simply a matter of completing final paperwork and purchasing readily available airline tickets to a regularly accessible spot in the world. As has been amply demonstrated, and as the government has at times acknowledged, deportation to Somalia is neither easily arranged nor easily executed. Rather, this situation is closer to arranging deportation to Vietnam or Cuba, with whom the U.S. does not have repatriation treaties and to which deportation is very difficult. Deportable nationals of these countries are regularly released from detention because, in light of barriers, their deportation cannot be effected in the reasonably foreseeable future.

The Court is well aware that **all** other Somalis in the United States who are subject to an order for removal have been released from detention. Jama is now the only Somali in detention who is subject to removal planning. If accomplishing Jama's deportation is as difficult as the government claims, and the Court has no reason to doubt that it is a

---

(Footnote continued.)

secured by March 14, 2005. (*Id.* at ¶12.) The government represents that, upon finalization of the contract with RMI, Jama should be deported within four weeks. (*Id.* at ¶ 14.) If this schedule is followed, a contract with RMI Security should have been finalized by March 14, 2005 and Jama should be deported by April 11, 2005, safely within the 90-day time period. The Court notes that, as of March 24, 2005, arrangements with RMI had not been finalized. (Hoechst Decl. at ¶¶8-11.)

difficult task given the primitive and relatively lawless conditions that exist in the former territory of Somalia, it would only make sense to release Jama with appropriate conditions and give authorities all the time they need to effectuate a safe and proper removal.[6] Jama has been a model prisoner for a significant period of time and there is no reason to believe that he is likely to flee. Forty-seven months in prison level custody is far too long, especially considering the important factors enumerated by the Supreme Court in *Zadvydas*. Mr. Jama is not a dangerous man, nor is he likely at this stage to flee the jurisdiction. He has accepted the fact that the Supreme Court has ruled against him and that he will be deported to the Somali territory. Under these unique circumstances, if the government is not ready to effectuate the deportation, Mr. Jama should be released like all other deportable Somalis until a safe and proper removal can be accomplished.

**ORDER**

Based on the foregoing, all the records, files, and proceedings herein, **IT IS HEREBY ORDERED** that:

1. Petitioner's motion to compel removal or release [Docket No. 90] is **DENIED**.

[6] Under the Agreement Between the Government of Canada and the Government of the United States of America for Cooperation in the Examination of Refugee Status Claims from Nationals of Third Countries and its implementing regulations, which took effect December 29, 2004, if Jama were to attempt to claim refugee or asylum status in Canada, he would be returned to the United States where, for purposes of U.S. immigration law, he would be in the same position he is in currently. (Available at http://uscis.gov/text/lawsregs/draftsafe.htm.) Thus, self-removal to Canada is no longer an option for Jama and respondent's often-argued concern that Jama would flee to Canada if released no longer has any merit, if it ever did.

**IT IS FURTHER ORDERED** that:

2. Respondent submit to the Court a written progress report detailing the status of it efforts to remove the petitioner on Tuesday April 12, 2005.

DATED: April 7, 2005
at Minneapolis, Minnesota.

s/ John R. Tunheim
JOHN R. TUNHEIM
United States District Judge