**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

---

JAMA, Keyse G. (A71 689 585)

Petitioner,

vs.

IMMIGRATION AND
CUSTOMS ENFORCEMENT,

Respondents.

**MEMORANDUM IN SUPPORT OF PETITIONER'S RENEWED MOTION FOR RELEASE**

**Civil No. 01-1172 (JRT/AJB)**

---

This Court ordered Respondent to "submit to the Court a written progress report detailing the status of it efforts to remove the petitioner on Tuesday April 12, 2005" (April 7, 2005 Order at 11.). Respondent's report provides only the following: "ICE reports that Jama's removal is imminent, and, barring any unforeseen circumstances, he will be removed no later than April 25, 2005." (Resp't Resp. at 1.) The April 12, 2005 Declaration of Lisa Hoechst similarly provides no detail regarding the planned removal of Petitioner: "[t]he arrangements to remove Jama are on the verge of completion and his removal is imminent. ICE anticipates that, barring any unforeseen circumstances, Jama will be removed from the United States no later than April 25, 2005." (Hoechst Decl. at ¶ 5.) This declaration and response evades the Court's Order requiring a detailed progress report of the plans to remove Petitioner. It offers no evidence that ICE is capable of accomplishing Jama's removal in the reasonably foreseeable future. Thus, Petitioner respectfully requests that the Court direct Respondent to describe the planned deportation in detail so that the Court may verify ICE 's unsupported statement that removal is imminent. If the Court finds that Respondent is unwilling or unable to provide evidence of reasonable

foreseeability, Petitioner respectfully requests that he be released under appropriate conditions of supervision until such time as his deportation is truly imminent.

The Supreme Court in *Zadvydas v. Davis*, 533 U.S. 678 (2001) required that "once the alien provides good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future, the Government must respond with evidence sufficient to rebut that showing." *Id*. at 701; (*see also* Dist. Ct. Order at 5). Promises, conclusory statements and ongoing "negotiations" are insufficient to extend detention. *See e.g. Okwilagwe v. INS*, No. 3-01-CV-1416, 2002 WL 356758 at *2-3 (N.D. Tex. March 1, 2002); *Habtegaber v. Jenifer*, 256 F.Supp.2d 692, 697 (E.D.Mich. 2003).

In response to the Court's demand for a showing of such evidence, ICE offers only a target date and the caveat that removal might not be possible because of "unforeseen circumstances." This statement is essentially the same as the statement in the March 7, 2005 Tsoukaris declaration promising Jama's removal within five weeks of March 7, 2005 "barring any unforeseen operational obstacles." (Tsoukaris Decl. at ¶14.) That target date passed on April 11, 2005. The most recent Hoechst declaration does not explain what the "unforeseen circumstances" were that prevented ICE from making its April 11 deadline and does not detail what types of delays may prevent ICE from deporting Jama on April 25. It is not clear from the declarations whether one of the "unforeseen circumstances" might be the fact that ICE has no concrete lawful arrangements to take Jama to Boosaaso as it has repeatedly represented to this Court it would. Because ICE avoided providing any information about the deportation plans on the record, there is no way of knowing whether ICE is still following its original plan of contracting with the private company RMI Security to get the acceptance of the warlord in control of a landing strip near Boosaaso to receive Jama and then fly him there or if ICE is

working on a Plan C or D that is as equally wild as its earlier plans.[1] There is no reason to believe that a declaration on April 25 will not simply contain another target date and the "unforeseeable circumstances" caveat. ICE also has been silent as to what arrangements if any have been made with the non-governmental groups who would receive Jama once he has arrived in Somalia. For example, ICE has not stated whether they have received any assurances that the group that receives Jama will not kill him or hold him for ransom. As the Hoechst Declaration is completely devoid of detail, it fails to provide "evidence sufficient to rebut" Jama's showing that ICE is incapable of deporting him to Somalia in the reasonably foreseeable future.

Furthermore, detail far more specific than what ICE has provided to date is necessary to ensure that Jama's deportation to Somalia is lawful. In addition to the concerns the Court expressed at oral argument that ICE's plans for deporting Jama sound more than vaguely illegal, the Court in its most recent Order stated that "the government has not explained how [the passport] hurdle can be overcome merely by using a private transport company rather than a commercial airline." (Order at 7 n. 4.) The government must not only demonstrate that Jama's deportation is practically possible but legal as well. To date, Respondent has made no such showing. Thus, Respondent's failure to meet its *Zavydas* burden entitles Jama to immediate release under appropriate conditions of supervision.

In light of Respondent's unwillingness to provide the Court with the information it has requested, Petitioner respectfully requests that the Court order Respondent to provide a

---

[1] The undersigned counsel discussed this question in a telephone conversation with ICE counsel on April 12, 2005 after receiving Respondent's Response. In that conversation, Mr. Greg Mack would not provide additional detail other to say that the removal plan as described in the previous declarations had not changed. When asked why ICE did not provide updated information on the removal to the Court, he stated that ICE had declined to provide that information.

declaration by 3 pm CST that answers to the following questions and any other questions the Court deems appropriate:

1. Describe in detail the arrangements ICE has made for Jama's removal to Somalia. If ICE is still pursuing the plan as detailed in its previous two declarations, include answers to questions 2-9 below in the description.

2. What is RMI Security?

3. What is the identity and nature of the entity in control of the landing strip in Boosaaso with whom RMI Security is negotiating for Jama's flight into Somalia? By virtue of what authority does this group control the landing strip?

4. Who are the persons with whom RMI Security primarily is negotiating? Provide names and contact information.

5. How will Jama be transported to the landing strip in Boosaaso?

6. What is the status of the negotiation between RMI Security and these persons? Provide copies of the "response from those persons" which consists of a number of questions as mentioned in paragraph 9 of the March 24, 2005 Hoechst Declaration. If the response did not come in writing, provide a detailed summary of the response. Provide copies of RMI Security's response to the persons in control of the landing strip. If the response was not in writing, provide a detailed summary of ICE's response.

7. Provide a copy of the "preliminary approval" ICE received by RMI Security from the persons in control of the landing strip in Boosaaso. If the "preliminary approval" did not come in writing, provide a detailed summary of the response.

8. What arrangements must RMI Security make in order to accomplish deportation for Jama to Somalia referred to in paragraph 11 of the March 24, 2005 Hoechst Declaration? What is the status of such arrangements? Has RMI Security received landing authorization? If not, when will RMI Security receive such authorization?

9. What will happen to Jama once he arrives at the landing strip? What arrangements have been made for Jama following his arrival at the landing strip? Has RMI Security and/or ICE received any guarantees regarding the safety of Jama? How does ICE know that the persons in control of the landing strip will not rob and/or harm Jama? What have the persons in control of the landing strip been told about Jama and the reason he is being deported?

In the alternative, Petitioner requests that he be allowed to take the deposition testimony of a senior level ICE official who is responsible for Jama's removal no later than Friday, April

15, 2005 in order to obtain the information necessary to assess the viability of ICE's removal plan.

If Respondent does not comply with the Court's order, Petitioner respectfully requests that he be released no later than 5 pm on Friday, April 15, 2005 under the appropriate conditions of supervision.

DATED: April 12, 2005.

BRIGGS AND MORGAN, P.A.

By: s/ Kevin M. Magnuson
Jeffrey J. Keyes (#55505)
Kevin M. Magnuson (#306599)
2400 IDS Center
80 South Eighth Street
Minneapolis, MN 55402
(612) 334-8400

**AND**

Michelle Garnett McKenzie
Minnesota Advocates for Human Rights
650 Third Avenue South #550
Minneapolis, MN 55402
(612) 341-3302

**ATTORNEYS FOR PETITIONER**