U.S. District Court for the District of Minnesota
Civil No. 01-1172 JRT/AJB

Keyse G. Jama,
Petitioner,

v.

Immigration and Customs Enforcement,
Respondent.

I, Lisa Hoechst, hereby declare that:

1. I am currently Chief for the Travel Document Unit of the Office of Detention and Removal Operations (DRO), Removal Management Division, U.S. Immigration and Customs Enforcement (ICE) within the Department of Homeland Security in Washington, D.C.

2. My present duties include oversight of all operations relating to the enforcement of final orders of deportation and the removal of criminal aliens from the United States.

3. In my official capacity, I have become familiar with ICE's efforts to remove Keyse Jama, alien file number 71 689 585.

4. On April 13, 2005, ICE was ordered by the U.S. District Court for the District of Minnesota to provide detailed information regarding the plans to remove Jama from the United States.

5. Based upon the following reasons, disclosure of this information is substantially likely to harm the law enforcement interests of the United States and pose a threat to the safety and well-being of those involved with the removal plans.

6. The United States government is directed to execute lawful orders of removal. It is long-standing ICE policy not to disclose specific details of a removal, such as location, carrier, or departure time.

7. The safety of escorting officers, flight crew, the public, and the deportee are jeopardized if details of a removal plan are released. Such safety issues include:

    a. Escorting officers and a deportee have been put in harm's way when assailants attempted to run a detainee transport off the road in order to foil a removal plan.
    b. Persons interested in foiling a removal operation have picketed airports so that the alien is not permitted to depart as planned.
    c. Escorting officers fear reprisal if their involvement in a controversial or high

profile deportation is known.

d. Escorting officers may be at placed at risk upon arrival at foreign airports. Foreign airports do not follow the same safety check systems as U.S. airports, thus an escorting officer may be vulnerable if removal plans are known.
e. A flight could be disrupted by any party intent on delaying or canceling that flight. For instance: a bomb threat could be called in to the airport or airline.
f. Commercial aircraft have been targeted and brought down by surface to air missiles in Africa.

8. Further, disclosure of operational details regarding Jama's removal may irreparably harm diplomatic relations with foreign entities that have assisted the United States in arranging Jama's removal. For example:
   a. Jama will be routed through an African city that has suffered terrorist attacks on U.S. interests.
   b. Eastern Africa is known to host terrorist entities hostile to U.S. interests.
   c. Foreign embassies have been forced to close in the past following leads of a possible terrorist attack.
   d. Foreign entities may refuse to cooperate with the United States if they fear retaliation based on their assistance.

9. Finally, from a policy standpoint, the safety and integrity of removal operations are paramount to ICE's mission, and any threat to that mission may defeat ICE's ability to carry out its directive of accomplishing safe removals in the future.

10. In summary, ICE has an important and substantial interest in safeguarding information regarding the details of Jama's removal. Preventing disclosure protects law enforcement interests and the safety of those involved in the removal as well as the public. Dissemination of this information would also result in substantial harm to the ICE Detention and Removal program.

I declare that the foregoing is true and correct to the best of my knowledge under penalty of perjury.

Executed in Washington, D.C. on the 14rd day of April, 2004.

L. Hoechst

Lisa Hoechst
U.S. Immigration and Customs Enforcement
Department of Homeland Security