**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

---

JAMA, Keyse G. (A71 689 585)

Petitioner,

vs.

IMMIGRATION AND CUSTOMS ENFORCEMENT,

Respondents.

**PETITIONER'S REPLY TO RESPONDENT'S RESPONSE TO THE COURT'S APRIL 13, 2005 ORDER**

**Civil No. 01-1172 (JRT/AJB)**

---

Petitioner respectfully replies to Respondent's latest two declarations by Lisa Hoechst ("First Hoechst Decl." and "Redacted Second Hoechst Decl."), both dated April 14, 2005. Respondent states that it cannot provide Petitioner with details regarding aircraft routes, carrier and departure time of the removal for reasons of safety, diplomatic necessity and "integrity of the removal operations." (Second Redacted Hoechst Decl. at ¶ 8.) Respondent also offers a variety of broad concerns which underlie its "long standing" secrecy policy of not divulging "specific details of a removal such as location carrier or departure time.". (First Hoechst Decl. at ¶¶ 6-10.) Although Petitioner believes that this concern is misplaced, he does not contest the Court's in camera review of the redacted declaration if the Court believes that the need for secrecy outweighs Petitioner's need to prepare for his departure. Petitioner's concern for the safety of the flight to Somalia is equal to that of ICE as he will be a passenger on that plane. For the record, Petitioner wishes the Court to know that he accepts the decision of the United States Supreme Court that he may be deported to Somalia and the authority of the immigration service to attempt to carry out that deportation in the near future even under circumstances as unusual as those the government proposes here. (*See* Jama Decl. at ¶ 2.) Petitioner states that he will

cooperate with the removal and promises not to physically or verbally resist the government's efforts deport him in any way. (*See id* at 3.) He will not cause others to resist or obstruct his removal to Somalia — in fact, he requests that no one try to physically disrupt any removal effort.[1] (*See id.* at 4.) However, a few significant concerns remain, which Petitioner respectfully requests the Court to address before approving Respondent's removal plan.

**I. DELIVERING PETITIONER TO A WARLORD**

Respondent's multiple declarations are completely devoid of details regarding the persons or group in Somalia to whom ICE's contractor will be delivering Petitioner. The lack of detail casts a shadow of possible unconstitutionality over the removal plan. The United States Supreme Court recognized in *Zadvydas v. Davis*, 533 U.S. 678 (2001) that liberty interests of even deportable aliens are protected by the Constitution. Even though a contractor of the United States government will be responsible of the final leg of Petitioner's proposed deportation, Petitioner remains in the custody of the United States throughout the deportation and it is the United States which will deliver him into the foreign entity. Thus, Petitioner's constitutional protections extend to the conditions of his arrival in Somalia.

Respondent has repeatedly stated that RMI Security has negotiated with a group in control of a landing strip near Boosaaso. The Court has expressed concern that ICE through RMI is negotiating with a "warlord" for Petitioner's deportation and Respondent has offered no information to contradict that assumption. Although Respondent in its latest declaration uses the euphemism "Puntland officials" to refer to the individuals with whom RMI is negotiating, Respondent admits that it does not even know the identity of these people. (*See* Second Redacted Hoechst Decl. at ¶ 6(b)(ii).) It further states that the U.S. government has no control

[1] Petitioner presumes that his treatment throughout the planned deportation will be reasonable and humane.

over what happens to Petitioner upon arrival. (*See id*. at n. 1.) In fact, the immigration service may be delivering Petitioner to nothing more than an armed gang who will rob him, hold him for ransom or kill him.[2] As the group in control of the landing strip is not recognized by the United States as a governmental entity, the presumption in a typical removal that the receiving government has the authority to determine the fate of the deportee is not present in this case. Thus, it is incumbent upon ICE to demonstrate prior to removal that it has received assurances that the entity to whom Petitioner will be delivered will not detain, harm or extort money from him upon arrival.

Respondent has not provided this information in its declarations to date not because it cannot obtain it but because it does not care about Petitioner's fate upon arrival. However, because of the highly unconventional and potentially unconstitutional nature of the proposed removal, Petitioner respectfully requests that the Court order Respondent to provide detailed information about the nature and identity of the individuals and group with whom RMI Security is negotiating for Petitioner's deportation and that Respondent provide Petitioner and the Court assurances that the receiving party will not detain, harm or extort money from Petitioner while in its control. Petitioner also requests that Respondent provide the exact information regarding the "bases underlying the alien's removal" and other information about Petitioner which ICE has communicated through RMI to the "receiving entity" prior to removal. Finally, Petitioner

[2] Respondent's repeated assertion that ICE is undertaking the extreme measures it describes in its declarations as a way of accommodating Petitioner's request to go to Boosaaso and the suggestion that ICE is not obligated to send him there is incorrect. Respondent throughout the protracted litigation in this matter has consistently represented that it can and will deport Petitioner to Boosaaso if the courts determine that acceptance from a central government is not a prerequisite to removal to Somalia. The fact that ICE feels compelled to utilize a highly irregular and expensive method of removal rather than wait until conditions in Somalia are such that deportations can be accomplished with a more reasonable method is not a result of anything Petitioner has done or chosen. The rationale for the extraordinary lengths to which ICE is prepared to go in its rush to removal is entirely obscure.

requests that the Court order Respondent to obtain the guarantee of the receiving entity that Petitioner will be allowed to communicate with the Court or with counsel by telephone or by email immediately upon arrival in Somalia.[3] This information will assure the Court that the removal plan, which tests the outer limits of the law, has not gone so far as to be unconstitutional.

## II. IDENTITY PAPERS

Petitioner should not be deposited in Somalia without identity papers. Although Somalia lacks a central government and is in varying states of war throughout the country, leaving Petitioner without documents establishing his identity likely will subject him to unnecessary harassment and detention by various groups in Somalia. Obtaining a valid Somali passport is impossible. Thus, Petitioner respectfully requests that the Court order the immigration service to provide him with a valid American identity document that contains a current photo and basic identity information prior to his removal.

## CONCLUSION

For the foregoing reasons, petitioner respectfully requests that prior to approving Respondent's removal plan, the Court order that:

1. Respondent provide detailed information about the nature and identity of the individuals and group with whom RMI Security is negotiating for Petitioner's deportation.

2. Respondent provide the exact information regarding the "bases underlying the alien's removal" and other information about Petitioner which ICE has communicated through RMI to the receiving entity.

3. Respondent provide assurances from the receiving entity that it will not detain, harm or extort money from Petitioner.

[3] Despite the lack of a central government, the telecommunication system in Somalia apparently is one of the more advanced in Africa. Telephone and internet service apparently are widely available, which calls into question the fate of past Somali deportees who have not communicated with family members or counsel.

4. Respondent obtain the guarantee of the receiving entity that Petitioner will be allowed to communicate with the Court or with counsel by telephone or by email immediately upon arrival in Somalia.

5. Respondent provide Petitioner with a valid American identity document that contains a current photo and basic identity information.

DATED: April 15, 2005.

BRIGGS AND MORGAN, P.A.

By: s/ Kevin M. Magnuson
Jeffrey J. Keyes (#55505)
Kevin M. Magnuson (#306599)
2400 IDS Center
80 South Eighth Street
Minneapolis, MN 55402
(612) 334-8400

**AND**

Michelle Garnett McKenzie
Minnesota Advocates for Human Rights
650 Third Avenue South #550
Minneapolis, MN 55402
(612) 341-3302
**ATTORNEYS FOR PETITIONER**