U.S. District Court for the District of Minnesota
Civil No. 01-1172 JRT/AJB

Keyse G. Jama,
Petitioner,

v.

Immigration and Customs Enforcement,
Respondent.

I, Leonard Kovensky, hereby declare that:

1) I am Director of the Removal Management Division of the Office of Detention and Removal Operations (DRO), U.S. Immigration and Customs Enforcement (ICE) within the Department of Homeland Security in Washington, D.C.

2) My present duties include oversight of all operations relating to the enforcement of final orders of deportation and the removal of such aliens from the United States.

3) In my official capacity, I am familiar with ICE's efforts to remove Keyse Jama, alien file number 71 689 585.

4) ICE has provided to the U.S. District Court for the District of Minnesota with a declaration dated April 18, 2005 which contains further information regarding the plans to remove Jama from the United States.

5) Disclosure of this information is substantially likely to harm the law enforcement interests of the United States and pose a threat to the safety and well-being of those involved with the removal plans.

6) The bases for this statement are outlined in the declaration filed with this Court on April 14, 2005 which provided ICE's justifications for the submission of information under seal. In addition to those justifications, ICE also notes the following justifications for the current filing under seal:

   a) Disclosure of the details of this removal plan will likely significantly harm ICE's ability to effect future removals to Somalia in general and Puntland in particular.

      i) Should the United States or its contractor (RMI Security) impose demands upon the receiving entity or question the treatment of the deportee upon arrival, the foreign entity would likely be insulted and may perceive this as distrust or suspicion by the United States.

(1) This could result in revocation of permission for RMI Security to fly into Somalia.

(2) Successful removals depend upon the goodwill fostered between foreign entities. Perceived insults or distrust would destroy the goodwill established so delicately in the instant matter through contractors and intermediaries.

b) Many foreign entities that many do not want to be perceived by their nationals as cooperating too readily with the U.S. Government. Some foreign entities who have assisted in or facilitated repatriation of their nationals have been viewed unfavorably as collaborators with the U.S. Government.

i) If the Puntland officials' identities were to be disclosed, they may very likely decline to facilitate future removals for fear of the "collaborator stigma."

c) Should the instant removal plan be disrupted and the contracts unfulfilled, the U.S. Government will still be required under contract to fulfill its obligations and pay full contract fees. This would result in the loss of a substantial amount of money for the U.S. Government.

7) In summary, ICE has an important and substantial interest in safeguarding information regarding the details of Jama's removal. Preventing disclosure protects law enforcement interests and the safety of those involved in the removal plan as well as of the public. Dissemination of this information would also result in substantial harm to the ICE Offic eof Detention and Removal Operations.

I declare that the foregoing is true and correct to the best of my knowledge under penalty of perjury. Executed in Washington, D.C. on the 18th day of April, 2005.

Leonard Kovensky
Director
Removal Management Division