U.S. District Court for the District of Minnesota
Civil No. 01-1172 JRT/AJB

Keyse G. Jama,
Petitioner,

v.

Immigration and Customs Enforcement,
Respondent.

# REDACTED DECLARATION

I, Lisa Hoechst, hereby declare that:

1) I am Chief for the Travel Document Unit of the Office of Detention and Removal Operations (DRO), Removal Management Division, U.S. Immigration and Customs Enforcement (ICE), within the Department of Homeland Security in Washington, D.C.

2) My present duties and responsibilities include conducting transportation and removal planning, defining and projecting transportation and removal requirements, and supporting field office execution of transportation and removal operations. In my current position, I am personally familiar with inter- and intra-governmental procedures for the repatriation of persons to Somalia.

3) I have been involved in the efforts to remove Keyse Jama. I am making this declaration both from facts known personally to me and from facts learned during the performance of official duties.

4) This declaration is intended to supplement the declarations submitted and signed on the 7th and 24th of March, and April 12th and 14th, 2005.

5) ICE DRO has the following information on the party with whom RMI Security has arranged Jama's deportation:

   a) I have learned from the ICE Attache in Nairobi, Kenya that RMI Security arranged for Jama's return with the self-proclaimed autonomous state of Puntland.

   b) I was also advised that the self-proclaimed autonomous state of Puntland ultimately approved Mr. Jama's return.

6) ICE has provided to RMI Security for conveyance during the consideration process for Jama's repatriation information regarding Jama and the bases underlying his removal.

   a) RMI Security provided the following information:

      "Mr. Jama was convicted on the 9/8/99 of 3rd degree assault and on 9/16/97 of theft. Mr. Jama is a Dhulbahante who has chosen Bosasso in Puntland as his destination. A judge has decided, that, due to his criminal convictions, Mr. Jama must be returned to his native Somalia.

      . . .

      Mr. Jama has completed the sentence for the crimes he committed and has been ordered removed. It is hoped that the Puntland government will accept their national as part of their international obligation."

   b) It should be noted that information regarding "the bases underlying the alien's removal" is routinely shared with the receiving entity for law enforcement purposes.

7) The United States does not request or obtain assurances from the receiving entity regarding a deportee's treatment upon arrival.[1]

   a) Furthermore, the U.S. Government is unable to seek or obtain assurances in the instant matter as it does not have diplomatic relations with Puntland and as such has no mechanism by which to seek assurances.

   b) Nonetheless, the receiving officials indicated that "the people who are supposed to return [to] Puntland as their homeland . . . are given freedom to stay, reside[,] and look for employment opportunities on their own."

   c) ICE DRO cannot guarantee the availability of a means of communication to an alien once he is outside the United States. However, Jama's counsel has stated that "[t]elephone and internet service apparently are widely available." Indeed, RMI Security has not indicated to ICE any problem in communicating with and receiving responses via email.

      i) ICE DRO will ask that RMI Security relay Jama's request to the Puntland officials that he be provided access to a means of communication. However, ICE cannot guarantee that this request will be granted.

8) As an alien without lawful status in the United States, Jama is not entitled to ICE identity documents. However, ICE DRO will provide to Jama a copy of the warrant of removal which contains his name, photograph, and fingerprint, in addition to a

---

[1] An exception not applicable here is the pursuit of diplomatic "assurances" for certain aliens granted Convention Against Torture protection.

copy of the order of removal issued by the Immigration Judge. In addition, if his alien registration file contains a driver's license which was on his person upon Jama's entry to ICE custody, that document will be returned to him.

I declare under penalty of perjury that the foregoing is true and correct. Dated April 18, 2005.

Lisa Hoechst
Chief
Travel Document Unit