**No. 01-1172**

---

**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

---

**KEYSE JAMA,**

**Petitioner,**

**v.**

**IMMIGRATION AND CUSTOMS ENFORCEMENT,**

**Respondent.**

---

# RESPONDENT'S REPLY TO PETITIONER'S RESPONSE TO RESPONDENT'S MOTION TO VACATE THE COURT'S APRIL 22, 2005 INJUNCTION AND DISMISS THE HABEAS PETITION

---

## Introduction

Petitioner Keyse Jama has a final order of removal to Somalia. Once again, as he has done on numerous occasions, Jama objects to the execution of his order of removal. Placing a constitutional and international law veneer on his claims does not overcome the fact that these claims may not be heard under this Court's habeas jurisdiction. In the REAL ID Act, Congress concluded that the district courts shall be divested of habeas jurisdiction over "all questions of law and fact, including interpretation and application of constitutional and statutory provisions, arising from

any action taken . . . to remove an alien from the United States . . . [,]" and any cause or claim arising from a decision or action to execute a removal order against an alien. See 8 U.S.C. §§ 1252(b)(9), 1252(g). Jama's claims fall squarely within the jurisdiction-limiting provisions of section 1252, as amended by the REAL ID Act.

**Respondent's Reply**

I. This Court No Longer Has Jurisdiction Over Petitioner's *Zadvydas* Claims.

Petitioner continues to litigate issues that the Supreme Court has resolved. Specifically, Petitioner's claim that without the Court's supervision he will be removed to another location within Puntland "without any regard for [his] safety" is but another attempt to request relief from removal in the form of asylum, withholding of removal, or protection under the Convention Against Torture. Petitioner is not eligible for such relief. In addition, the Supreme Court concluded that courts should not construe statutes to provide for relief from removal outside of the statutory mechanisms for such relief. See Jama, — U.S. —, 125 S. Ct. 694, 704 (2005) (stating that "individualized determinations" under the applicable statutory and regulatory provisions "strike a better balance securing the removal of inadmissible aliens and ensuring their humane treatment than does [Jama's] suggestion that silence from Mogadishu inevitably portends future mistreatment and justifies declining to remove anyone to Somalia."). In sum, Petitioner is a criminal alien with a final order

of removal, which the government is endeavoring to execute.

Petitioner's repeated references to Zadvydas v. Davis, 533 U.S. 678 (2001), as a foundation for continued habeas jurisdiction over his constitutional and international law claims, fails to recognize that, at bottom, Zadvydas is a case concerning statutory construction, to wit, the outer limits of 8 U.S.C. § 1231(a)(6). While the Court noted that serious constitutional questions called for a certain construction of the statute, the case nevertheless is still about the scope of the statute, and not about constitutional rights. In any event, the constitutional right in question concerned freedom from arbitrary detention. Petitioner's detention claims are now pending before the Eighth Circuit. They are no longer pending before this Court. Accordingly, Respondent's motion to vacate did not ignore Petitioner's Zadvydas claims, but this Court is divested of jurisdiction over them. Similarly, Petitioner's detention claims cannot be a basis for production of documents concerning his repatriation because those claims are no longer before this Court, the Court has no jurisdiction over his remaining claims, and, as noted previously, the Supreme Court has noted that the federal courts should be cognizant of the government's foreign policy concerns when it comes to repatriation and removal.

## II. The REAL ID Act Divests This Court Of Habeas Jurisdiction Over Questions Arising From The Execution Of Petitioner's Removal Order.

Petitioner's non-detention claims fall squarely within the REAL ID Act's jurisdiction-limiting provisions. Petitioner's call for the Court to retain habeas jurisdiction to monitor the removal process constitutes a claim arising from a decision or action to execute his order of removal, and action taken to remove him. See 8 U.S.C. §§ 1252(b)(9), 1252(g). After the REAL ID Act, it is clear that this Court lacks habeas jurisdiction over such claims. To the extent that Petitioner contends that habeas must exist to guard against the potential for being thrown off a plane, subjected to extreme physical pain through the use of physical restraints or drugs, or being forced across a border into a life-threatening environment, see Petitioner's Response at 4, his claims are speculative, and the instant case does not involve such claims. At bottom, Petitioner faces a final order of removal, and the government has stated that it intends to execute the order of removal, and it is prepared to do so by removing him to Bossasso or another location within Puntland.

Further, sections 1252(b)(9) and 1252(g) do more than "limit the way in which an alien can contest a final order of removal." See Petitioner's Response at 7. After the REAL ID Act, these provisions divest this Court of habeas jurisdiction to challenge the execution of an order of removal or consider questions of fact or law,

including interpretation and application of constitutional and statutory provisions. See 8 U.S.C. §§ 1252(b)(9), 1252(g). The decision to execute an order of removal, and to resolve the questions concerning when, where, and how to execute the order are inherently discretionary determinations which Congress deemed should be free from fragmented and duplicative rounds of litigation. See id; see also Reno v. American-Arab Anti-Discrimination Committee, 525 U.S. 484, 485 (1999) ("Section 1252(g) seems clearly designed to give some measure of protection to . . . discretionary determinations, providing that if they are reviewable at all, they at least will not be made the bases for separate rounds of judicial intervention outside the streamlined process [in section 1252] that Congress has designed.").

This Court's and the Eighth Circuit's reading of section 1252(g) occurred prior to the passage of the REAL ID Act. Thus, neither Court has addressed the REAL ID Act's impact on Petitioner's claim that "he is invoking the Court's traditional habeas protection to prevent the government's unlawful conduct against him while he is in the custody of the United States." See Petitioner's Response at 8. In the immigration context, what remains of this Court's habeas jurisdiction is its authority to review the lawfulness of an alien's immigration detention. See 28 U.S.C. § 2241(c)(3) ("The writ of habeas corpus shall not extend to a prisoner unless he is ***in custody in violation*** of the Constitution or laws or treaties of the United States[.]"). Thus, it is

not the case that the Court has the authority to bar the government's allegedly unlawful conduct while Petitioner is in custody, but rather the lawfulness of the alien's custody that remains viable in habeas.

III. International Law Provides No Remedy For Petitioner.

International law is not a basis for jurisdiction, and it may not be used to provide Petitioner with any more than that which Congress provided to him. See Garcia-Mir v Meese, 788 F.2d 1446, 1455 (11th Cir. 1986), cert. denied sub nom., Ferrer-Mazorra v. Meese, 479 U.S. 889 (1986) (international law is displaced by a properly enacted and constitutional statute, even if the statute violates international law); Gisbert v. United States, Attorney General, 988 F.2d 1122 (5th Cir. 1993) ("international law is not controlling because federal executive, legislative, and judicial actions supersede the application of these principles of international law."). In addition, the provisions of the International Covenant on Civil and Political Rights that Petitioner relies on are non-self-executing, as Petitioner notes. See Petitioner's Response at 6 & fn. 1. Petitioner is not simply defensively invoking international law. See Petitioner's Response at 6 & fn. 1. Rather, he asserts that this Court's habeas jurisdiction exists to remedy violations of international law. See Petitioner's Response at 5 ("Another source of petitioner's right to be free from cruel, inhumane, and life-threatening treatment by the government while in custody in the deportation

process is international law.") (emphasis added). Petitioner refers to protection against torture, punishment, slavery, genocide, slavery, and murder as a basis to invoke this Court's habeas jurisdiction. See Petitioner's Response at 6. As the Supreme Court noted, protection against alleged harm in Somalia is best afforded through pursuing relief through the statutory mechanisms Congress provided to adjudicate such claims and guard against such harm. See Jama, 125 S. Ct. at 704. Those statutory mechanisms are not displaced by international law, nor can international law be used to supplement them. See Jama, Garcia-Mir, Gisbert, supra. Further, deportation is not punishment, see Carlson v. Landon, 342 U.S. 524, 537 (1952), and Petitioner has provided nothing but speculative claims about harm arising from the deportation process.

If Petitioner contends that habeas jurisdiction is needed to guard against such harm from agents or officers of the United States, then these claims fall wholly outside the scope of this habeas petition, as it began with an objection to the execution of an order of removal. The habeas petition has not been amended to include such a claim, and it does not contain a challenge to acts of the United States government that arise in the course of executing an order of removal. Even if it did, we have noted above that such claims fall outside of habeas and that they are speculative.

In sum, Petitioner has a final order of removal to Somalia, and the government may return him to Somalia, notwithstanding his claims of harm. The Supreme Court has rejected his attempt to bar removal based on failure of the government of Somalia to accept his repatriation. Petitioner's Response litigates claims that have already been put to rest in this case. It is now time to execute his order of removal.

## IV. Habeas Is Not Available To Redress Speculative Claims Of Unlawful Conduct Concerning The Execution Of A Removal Order.

Jama mistakenly claims that habeas jurisdiction remains available to restrain the unlawful conduct of the United States government or its agents in the course of removing him. First, there is no allegation in the instant case that the United States government or its agents have engaged in unlawful conduct. To the extent Jama claims unlawful conduct can be found in RMI personnel's alleged threat to leave him in Puntland or take him to Mogadishu, this claim is without merit. Jama had, and has, an order of removal to Somalia. Prior to the Court's April 22, 2005 injunction, Jama's order of removal could have been executed by removing him to any location in Somalia. There was nothing unlawful in contemplating removing Jama to another location within Puntland or Somalia, even if that were seriously contemplated.

Second, Jama's response repeatedly refers to unlawful conduct, but it does not specify what unlawful conduct that Respondent or RMI allegedly have committed.

Rather, it provides hypothetical points for the Court to consider in assessing whether it should retain habeas jurisdiction. See Petitioner's Response at 4. Those hypothetical claims are speculative, and thus do not raise a current case or controversy.

It should be noted that concerns about placement in a war-torn territory or being "forced across a border into a life-threatening environment," see id., are addressed in the Immigration and Nationality Act's ("INA") provisions concerning asylum, withholding of removal, and protection under the Convention Against Torture, with the attendant judicial review if an alien is inclined to challenge an Immigration Judge's or the Board's denial of relief from removal. Congress was clear in the REAL ID Act about divesting the district court's of habeas jurisdiction on questions of law and fact arising under the INA, including questions of constitutional law. See 8 U.S.C. §§ 1252(b)(9), 1252(g) (2005).

Finally, Petitioner contends that the April 22 injunction should not be vacated because he has a right to habeas protection to avoid mistreatment "in violation of his constitutional rights during the deportation process itself." See Petitioner's Response at 11. Petitioner refers to his treatment on the ground in Bossasso as a reason that the Court should continue its habeas jurisdiction. Specifically, he notes that he was met with a chaotic situation on the ground where

he was surrounded by 20 armed men, he was not accepted by Puntland officials, and the private contractor allegedly threatened to leave him someplace in Puntland or take him to Mogadishu. See id. at 10. When Petitioner landed on the ground in Puntland, he had a final order of removal to Somalia. It was reasonable for those involved in his removal to consider whether he should be removed to a location other than Bossasso. Ultimately, a judgment was made to return Petitioner to the United States. That does not suggest inhumane or punitive treatment. It suggests the opposite. Further, an order of removal to Somalia leaves it within the government's discretion about where in Somalia to remove Petitioner. It has, at the moment, continued to endeavor to remove him to Puntland. Moreover, Petitioner's complaints about treatment on the ground in Somalia are but further litigation over his objection to removal to Somalia because there is no government there to ensure that he is safely repatriated. The Supreme Court explicitly rejected this claim. See Jama, 125 S. Ct. at 704.

## CONCLUSION

For the foregoing reasons, the government respectfully requests that the Court vacate the injunction and dismiss the petition for a writ of habeas corpus. Further, we respectfully request that the Court rule on this motion

Respectfully submitted,

PETER D. KEISLER
Assistant Attorney General

DAVID J. KLINE
Principal Deputy Director

s/Greg D. Mack
GREG D. MACK
Senior Litigation Counsel
U.S. Department of Justice, Civil Division
Office of Immigration Litigation
P.O. Box 878, Ben Franklin Station
Washington, D.C. 20044
(Tel.) (202) 616-4858
(Fax) (202) 616-9366

July 11, 2005