**No. 01-1172**

---

**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

---

**KEYSE JAMA,**

**Petitioner,**

**v.**

**IMMIGRATION AND CUSTOMS ENFORCEMENT,**

**Respondent.**

---

# RESPONDENT'S EMERGENCY MOTION FOR A STAY OF THE COURT'S APRIL 22, 2005 INJUNCTION AND REQUEST FOR ACTION ON THIS MOTION BY NOON, JULY 13, 2005

---

## INTRODUCTION

Petitioner Keyse Jama's removal is imminent. See Exhibit 1 (containing Respndent's in camera, ex parte declaration, submitted under seal); see also Exhibit 2 (containing declarations concerning the harm from further disclosure of information concerning removal operations). On April 22, 2005, the Court entered an injunction after Respondent Immigration and Customs Enforcement ("ICE") attempted to execute Jama's May 9, 2001 order of removal. Specifically, the Court ordered that ICE, "or any agent acting on its behalf, is prohibited from

accomplishing any deportation procedure different from that previously presented to this Court without the prior review of the Court." Exhibit 3. Respondent has filed a motion to vacate that injunction and to dismiss Jama's petition for a writ of habeas corpus. As noted in that motion, Respondent intends to remove Jama to Bossasso, a location within Puntland. In the event that removal to Bossasso is not accomplished, Respondent intends to remove Jama to another location within Puntland. The Court's April 22, 2005 injunction bars removal to locations other than Bossasso. The Court has not acted on Respondent's motion to vacate the injunction and dismiss the habeas petition. Because Jama's removal is imminent, see Exhibit 1, Respondent respectfully requests that the Court grant this emergency motion for a stay of the April 22, 2005 injunction .

We further respectfully request that the Court act on this motion by noon tomorrow, July 13, 2005.

## FACTUAL AND PROCEDURAL BACKGROUND

In 1999, following an incident in which he stabbed three people, see Exhibit 2 to Respondent's Response To Petitioner's Emergency Motion To Compel Release Or Removal, Jama was convicted of felony assault.[1] In 2001, Jama's order of removal became final when the Board of Immigration Appeals dismissed

[1] Respondent incorporates by reference its previous pleadings in this matter, which contain a fuller description of the factual and procedural background in this case.

his appeal of the Immigration Judge's order of removal to Somalia. In 2003, the Eighth Circuit reversed this Court's injunction on Jama's removal to Somalia. See Jama v. INS, 329 F.3d 630 (8th Cir. 2003) (Jama I). On March 1, 2005, the Eighth Circuit issued its mandate after the Supreme Court affirmed Jama I. See Jama v. ICE, — U.S. —, 125 S. Ct. 694 (2005).

On April 20, 2005, Respondent attempted to remove Jama to Somalia, without success. Jama was returned to the United States, and he remains in detention in this judicial district. At Jama's request, the Court issued in injunction on April 22, 2005, which bars Respondent or any agent acting on its behalf, from "accomplishing any deportation procedure different from that previously presented to this Court without the prior review of the Court." Exhibit 3.

On July 5, 2005, Respondent filed a motion to vacate the April 22, 2005 injunction and dismiss the instant petition. Specifically, Respondent stated that "the President of the self-proclaimed autonomous region of Puntland, which is Jama's desired destination within Somalia, has 'recently approved Jama's repatriation in writing and has assured his acceptance upon arrival.'" Exhibit 4 (containing declaration of Deputy Assistant Clark). Respondent also stated that it had developed a plan to remove Jama, and this plan "will be executed on a date certain" that is "within the next 35 days." See id. Further, Respondent stated that it intended to remove Jama to Bossasso, which was discussed in a removal plan

that was previously submitted to the Court. However, if removal to Bossasso is unsuccessful, Respondent stated that it intended to remove Jama to another location within Puntland. See id. Removal of Jama to a location other than Bossasso requires vacatur of the Court's April 22, 2005 injunction. Respondent requested that the Court vacate the injunction and dismiss the instant petition by July 5, 2005. The Court has not yet acted on this motion, and Respondent's removal plans will be thwarted if the injunction remains in place. Accordingly, Respondent respectfully requests that the Court grant this emergency motion for a stay of the April 22, 2005 injunction.

## ARGUMENT

### I. The Applicable Standard For A Stay.

The standard for a stay is the same as the standard for a preliminary injunction. See generally In re Hops Antitrust Litigation, 832 F.2d 470, 472-73 (8th Cir. 1987); Gans v. Merrill Lynch Futures, Inc., 814 F.2d 493 (8th Cir. 1987). There are four factors which must be considered in assessing a request for a preliminary injunction in this circuit: (1) the threat of irreparable harm to the movant if it is denied, (2) the state of balance between this harm and the injury that granting the injunction will inflict on other litigating parties, (3) the likelihood that the movant will succeed on the merits, and (4) the public interest. See Dataphase Systems, Inc. v. CL Systems, Inc., 640 F.2d 109, 113-14 (8th Cir.

1981). The burden is on the movant to show that a stay should be granted. Id.

## II. The Government Is Likely To Prevail On The Merits Of Its Challenge To The Court's Habeas Jurisdiction Over This Case And Its Assertion That Changed Circumstances Warrant Vacatur Of The April 22, 2005 Injunction.

There is a strong likelihood that Respondent will succeed on the merits of its claim that the REAL ID Act of 2005, Pub. L. No. 119-13, § 106, Div. B, 119 Stat. 231 (May 11, 2005), divested this Court of habeas jurisdiction over the instant case, and that the President of Puntland's recent letter and Respondent's current removal plan constitute circumstances which should lead to the vacatur of the April 22, 2005 injunction. As noted in the government's July 5, 2005 motion, the district courts no longer have habeas jurisdiction over challenges to the execution of an order of removal or any action taken to remove an alien from the United States. See 8 U.S.C. §§ 1252(a)(5), 1252(b)(9), 1252(g) (2005).

Section 1252(b)(9) provides that questions arising from any action taken to remove an alien may be reviewed only in the context of judicial review of a final order of removal, and explicitly bars habeas review of such questions. Id. New 8 U.S.C. § 1252(a)(5) makes it clear that the sole and exclusive means for judicial review of a final order of removal is through a petition for review filed in the appropriate court of appeals. Further, 8 U.S.C. § 1252(g) deprives the district courts of habeas jurisdiction over challenges to the execution of orders of removal.

Because Jama's detention claims are pending before the Eighth Circuit, the remaining issues before this Court, particularly the Court's April 22, 2005 injunction, fall within the scope of the jurisdiction-limiting provisions of 8 U.S.C. § 1252, as amended by the REAL ID Act of 2005. In short, what remains before this Court are claims arising from an action taken to execute Jama's order of removal, and challenges decisions or actions concerning the execution of an order of removal. See 8 U.S.C. §§ 1252(b)(9), 1252(g). These issues may not be considered by this Court under its habeas jurisdiction.

Further, Respondent's July 5, 2005 motion submitted a declaration outlining aspects of its removal plan and referring to the President of Puntland's written statement concerning Jama's repatriation. Exhibit 4. These new developments, which arise after the Court's April 22, 2005 injunction, warrant vacatur of the injunction. Respondent is endeavoring to remove Jama to Puntland, and the Court's injunction barring removal to locations in Puntland other than Bossasso, will hinder and possibly prove fatal to Respondent's next attempt to remove Jama to Puntland. Jama's removal to Puntland is imminent. See Exhibit 1. Puntland is the homeland of Jama's clan, and it is where he has requested that he be removed. Respondent respectfully requests that the Court issue a stay of its injunction in order to provide Respondent with the broadest range of options in removing Jama to Puntland. We further respectfully request that the Court act on this emergency

motion by noon July 13, 2005.

## III. The Government Will Suffer Irreparable Harm If Its Removal Operations and Options Concerning Jama Are Curtailed Or Otherwise Hindered By The Court's April 22, 2005 Injunction.

The Government has worked diligently for months completing arrangements for Jama's removal, at considerable expense to the Government. This work is in addition to the expenditure of resources associated with the previous attempt to remove Jama. Respondent has worked to secure a written statement from the President of Puntland concerning Jama's repatriation, and Jama's removal is imminent. See Exhibit 1. In the event that the Court does not stay the April 22, 2005 injunction and dismiss the habeas petition, Respondent's removal operations and options will be hindered. Given the Executive Branch's authority and responsibility to execute removal orders in a variety of political and foreign circumstances, removal operations require a considerable degree of flexibility, which the Supreme Court has stated requires deference by the judiciary. See Jama v. ICE, — U.S. —, 125 S. Ct. 694, 704 (2005) ("Removal decisions, including the selection of a removed alien's destination, 'may implicate our relations with foreign powers' and require consideration of 'changing political and economic circumstances.'") (citing Mathews v. Diazs, 426 U.S. 67, 81 (1978)); Zadvydas v. Davis, 533 U.S. 678, 700 (2001) (stating that the judiciary's review of the reasonableness of an alien's detention "must take appropriate account of the

greater immigration-related expertise of the Executive Branch, of the serious administrative needs and concerns inherent in the necessarily extensive [governmental] efforts to enforce this complex statute, and the Nation's need to 'speak with one voice in immigration matters.'") see also id. (stating that the courts must "listen with care when the Government's foreign policy judgments, including, for example, the status of repatriation negotiations, are at issue, and to grant the Government appropriate leeway when its judgements rest upon foreign policy expertise.").

The Court's injunction and continuing supervision are detrimental to the Executive Branch's authority and responsibility to execute removal orders. Further, barring Jama's removal to locations in Puntland other than Bossasso raises the potential that if removal to Bossasso is unsuccessful, Jama will need to be returned to the United States and the President of Puntland may be unwilling to facilitate future removal efforts. Such an occurrence would have serious consequences for not only Jama's removal, but the removal of other removable aliens to Puntland. That possible outcome is not what the Supreme Court envisioned when it stated that there should be deference to the Executive Branch's considerable expertise and discretion in the execution of orders of removal. See Jama, Zadvydas, supra. Accordingly, the government has a strong likelihood of succeeding on the merits, and it respectfully requests that this Court issue a stay of

its injunction by noon July 13, 2005.

## IV. The Public Interest Would Be Served By A Stay Of The April 22, 2005 Injunction, And The Irreparable Harm To The Government And the Public Interest Outweigh Any Harm To Jama.

There is a strong public interest in the removal of aliens whose criminal activities constitute a danger to the community. See H.R. Rep. 104-879, *6, 104th Cong. 2d Sess. 1997 (stating that greater priority and resources should be given to "the apprehension, detention, and removal of criminal aliens"). Jama was ordered removed because of his criminal activities, to wit, felony assault. The Eighth Circuit's issuance of the mandate on March 1, 2004, authorized Respondent to execute Jama's order of removal. The mandate is a directive that the order of removal is no longer subject to this Court's 2002 injunction, and that Respondent is authorized to execute the order of removal. Respondent is endeavoring to do so. As noted above, the Court's injunction and continued supervision over this matter are a hindrance to the execution of Jama's order of removal.

Jama has no legal basis upon which to invoke this Court's habeas jurisdiction or its continued supervision of the execution of the order of removal. In the typical case, where a court of appeals denies an alien's petition for review, such court issues its mandate, and the government executes the order of removal, without any further judicial activity or involvement. Given the Supreme Court's

decision in Jama I, the Eighth Circuit's mandate, and the passage of the REAL ID Act, the time has come to terminate this Court's assertion of jurisdiction to continue supervision over Jama's removal and to execute his order of removal.

## CONCLUSION

For the foregoing reasons, the government respectfully requests that this Court 1) grant this emergency motion for a stay of its April 22, 2005 injunction; 2) issue a temporary stay of that decision pending review of this motion for a stay; 3) grant Respondent other appropriate relief; and 4) act on this motion by noon July 13, 2005.

Respectfully submitted,

PETER D. KEISLER
Assistant Attorney General

JONATHAN COHN
Deputy Assistant Attorney General

DAVID J. KLINE
Principal Deputy Director

s/Greg D. Mack
GREG D. MACK
Senior Litigation Counsel
U.S. Department of Justice
Civil Division
Office of Immigration Litigation
P.O. Box 878, Ben Franklin Station
Washington, D.C. 20044
(Tel.) (202) 616-4858
(Fax) (202) 616-9366

July 12, 2005