**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

---

JAMA, Keyse G. (A71 689 585)

Petitioner,

vs.

IMMIGRATION AND
CUSTOMS ENFORCEMENT,

Respondents.

**PETITIONER'S RESPONSE TO RESPONDENT'S EMERGENCY MOTION FOR A STAY OF THE INJUNCTION AND REQUEST FOR ACTION BY NOON JULY 13, 2005**

**Civil No. 01-1172 (JRT/AJB)**

---

Respondent claims that petitioner Keyse Jama's removal is imminent, a representation based on an in camera, *ex parte* declaration submitted under seal. (Resp't Mot. at 1.) Petitioner assumes that the government complied with this Court's order that it provide the Court with a copy of the letter respondent claims is from the President of Puntland accepting Jama's deportation with its in camera submission. If the Court is satisfied that respondent does in fact have a written personal letter from the President of Puntland accepting Jama's deportation, as it has represented, Jama does not have any objection to deportation to alternate reasonable destinations in Puntland should deportation to Boosaasoo fail. Petitioner of course understands "reasonable destination" to exclude simply leaving Jama, for example, in a remote wasteland where survival itself is at issue. Petitioner has previously argued to the Court that Jama has a minimum level of constitutional protection during the deportation, which would prevent the government from taking some extreme action during the deportation which would jeopardize his safety.

It is difficult to understand why deportation to Boosaaso would fail, however. Counsel for petitioner has already communicated to respondent's counsel that the undersigned has received assurances from the Deputy Chief of Police for Puntland, who refused to accept Jama during the last failed removal effort, would allow Jama to remain in Boosaaso if the President of Puntland had accepted him. (*See* May 20, 2005 Email from Magnuson to Mack.) However, if respondent needs to have contingency plans given the huge investment the government has made in attempting to remove Jama, petitioner does not object to reasonable alternative destinations.

Petitioner would, however, request that the Court deal with the much larger and more significant question of the Court's jurisdiction in this habeas petition after it has had the opportunity to fully consider the arguments of the parties, including oral arguments. Any stay of the April 22, 2005 Order should be conditioned upon the new removal plan (outlined in confidential exhibit 1) assuring Jama's safety and security in the deportation process to a reasonable destination in Puntland in compliance with Jama's constitutional rights.

DATED: Wednesday, July 13, 2005. BRIGGS AND MORGAN, P.A.

By: s/ Kevin M. Magnuson
Jeffrey J. Keyes (#55505)
Kevin M. Magnuson (#306599)
2200 IDS Center
80 South Eighth Street
Minneapolis, MN 55402
(612) 334-8400

**AND**

Michelle Garnett McKenzie
Minnesota Advocates for Human Rights
650 Third Avenue South #550
Minneapolis, MN 55402
(612) 341-3302

**ATTORNEYS FOR PETITIONER**

## Magnuson, Kevin

**From:** Magnuson, Kevin
**Sent:** Friday, May 20, 2005 11:33 AM
**To:** 'Greg.Mack@usdoj.gov'
**Cc:** Keyes, Jeffrey J.; Michele Garnett-McKenzie (mgmckenzie@mnadvocates.org)
**Subject:** RE: Jama

Greg: I have received no objection to our May 9 offer to contact the Deputy Chief of Police in Boosaaso, with whom I spoke immediately after Jama was refused entry to Puntland. I spoke with him today through a Somali interpreter. He stated to me that he has no information of any discussion in the Puntland government about accepting Jama if ICE attempts to deport him again. He stated, however, that if the President of Puntland agrees to allow Jama to return to Puntland, he would allow Jama to enter the country at Boosaaso. Thus, should official acceptance be forthcoming, we expect that ICE will return Jama to Boosaaso as per the plan presented to the Court.

Lisa Hoechst in her May 6, 2005 Declaration stated that the President of Puntland would communicate to RMI by the end of the week (May 13) that Puntland had accepted Jama's return with a Certificate of Identity (which you may remember, we requested that Jama have last time). To date, we have not received any indication that you have received such acceptance. Please let me know whether or not you have received it. If you are still negotiating, please inform me of the status of your negotiations. At this point, I do not wish to bother the Court with this request for information. Please be aware, however, that, as a condition to continuing to detain Jama and in order to avoid another deportation debacle, we would expect to see the document officially accepting Jama from the President of Puntland. As both Boosaaso and Garoowe are in Puntland and officials in either city are subject equally to the decrees of the President of Puntland, we consider the statement in the Hoechst declaration that RMI would rather not fly Jama into Boosaaso an admission that RMI's "contact" in fact may not be able to obtain the acceptance from the President of Puntland.

Please provide the update as soon as possible. As ICE has refused to deal directly with the government of Puntland, we believe that we must contact the President of Puntland directly in order to ensure that ICE has a real deportation plan and if so that it will be successful this time. We will make contact with the President of Puntland early next week.

-----Original Message-----
From: Greg.Mack@usdoj.gov [mailto:Greg.Mack@usdoj.gov]
Sent: Monday, May 09, 2005 4:19 PM
To: Magnuson, Kevin
Subject: RE: Jama

thanks, I will pass it along to my client.

GDM

-----Original Message-----
From: KMagnuson@Briggs.com [mailto:KMagnuson@Briggs.com]
Sent: Monday, May 09, 2005 5:16 PM
To: Mack, Greg (CIV)
Subject: Jama

Greg: I saw in your client's last declaration that RMI's "contact" thinks that he can get acceptance from the Puntland government but doesn't think that it is possible even with that consent to fly Jama into Boosaaso. If your client's intention is to put Jama in the middle of a turf battle between authorities in Boosaaso and RMI's contact in Garowe, everyone will suffer -- possibly even the contractors -- because the two towns are controlled by the same sub-clan and the community is small. Plus, who knows how long your client's third-hand negotiations are going to take. I think I should call the Deputy Police Chief, who called me after they refused to accept Jama, and see if I can't convince

them to let Jama return to Boosaaso. Given you're client's penchant for unsubstantiated accusations, I'm telling this ahead of time so that you will be clear that we are trying to get Jama to Somalia as quickly and safely as possible.

Kevin M. Magnuson

Briggs and Morgan P.A.

2200 IDS Center

Minneapolis, Minnesota 55402-2157

(612) 977-8438 (direct)

(612) 977-8650 (FAX)

CONFIDENTIALITY NOTICE: The information contained in this e-mail communication and any attached documentation may be privileged, confidential or otherwise protected from disclosure and is intended only for the use of the designated recipient(s). It is not intended for transmission to, or receipt by, any unauthorized person. The use, distribution, transmittal or re-transmittal by an unintended recipient of this communication is strictly prohibited without our express approval in writing or by e-mail. If you are not the intended recipient of this e-mail, please delete it from your system without copying it and notify the above sender so that our e-mail address may be corrected. Receipt by anyone other than the intended recipient is not a waiver of any attorney-client or work-product privilege.

This email has been scanned for all viruses by the MessageLabs SkyScan service. (http://www.messagelabs.com)

This email has been scanned for all viruses by the MessageLabs SkyScan service. (http://www.messagelabs.com)