**No. 01-1172**

---

**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

---

**KEYSE JAMA,**

Petitioner,

v.

**IMMIGRATION AND CUSTOMS ENFORCEMENT,**

Respondent.

---

# PETITIONER'S REPLY MEMORANDUM REGARDING RESPONDENT'S MOTION TO DISMISS WITH PREJUDICE THE PETITION FOR A WRIT OF HABEAS CORPUS

---

## I. KEYSE JAMA IS NOT A "FUGITIVE"; THE "FUGITIVE DISENTITLEMENT" DOCTRINE HAS NO APPLICABILITY TO THIS CASE.

The term "fugitive," as it is used in the "fugitive disentitlement" doctrine cited by the government, refers to a person who flees lawful custody and conceals himself from the authorities. See, e.g., *Barnett v. YMCA*, 268 F. 3d 614 (8th Cir. 2001). Jama did not flee from lawful custody and go into hiding. Rather, he exercised a basic international human right to leave the United States and seek refuge through the asylum process in the

country of Canada.[1] As the affidavit of Canadian barrister David Yerzy establishes, Jama advised the Canadian authorities that he had come from the USA and that he had filed an asylum claim in the USA. Yerzy affidavit at ¶ 4. He provided details of his criminal record and copies of his asylum application and the various orders made concerning his removal and continued detention, and the Canadian authorities were provided with various newspaper articles describing Jama's experiences including the failed attempt to remove him to Somalia in 2005. *Id*. at ¶ 5. Jama complied with all the requirements asked of him by Canada Immigration, submitted the details of his claim to the Refugee Board of Canada, and is currently waiting for the Refugee Board to set a hearing date. Id. at ¶ 4. Canadian barrister Yerzy indicates in his affidavit that it is the normal practice of Canada Immigration to contact the INS when persons arrive from the USA to determine if they have any outstanding warrants. *Id*. at ¶ 6. The government did not disclose in its motion whether it had received such information from Canada.

It is not at all clear why the government wants this Court to make a finding that Jama is a "fugitive." It may be that the government seeks to somehow prejudice Jama's claim in Canada to be a Convention Refugee and a Person in Need of Protection in Canada. This would be quite inappropriate in light of the travails Jama has suffered including his five year "administrative detention" in various prisons in the U.S., the harrowing failed deportation attempt in April, 2006 and the recent frightening events in

[1] For example, Article 14 of the Universal Declaration of Human Rights, one of the foundation documents for the international human rights regime, provides that: "Everyone has the right to seek and enjoy in other countries asylum from persecution." Universal Declaration of Human Rights, G.A. Res. 217A (III), U.N. GAOR, 3d Sess., Supp. No. 16, U.N. Doc. A/810 (1948).

Somalia where the U.S. government may still attempt to forcibly remove Jama.[2] Jama is no more a fugitive than any refugee who, faced with peril in one country, journeys to another country where protection from persecution may be sought.

II. THE RELIEF SOUGHT BY THE GOVERNMENT SHOULD BE DENIED.

The government also uses the "fugitive disentitlement" claim as a basis to seek to vacate this Court's injunction of April 22, 2006 and to dismiss this case "with prejudice." The crux of the government's argument is that because Jama failed to adhere to the conditions of supervised release (he did not report to ICE on a weekly basis after he went to Canada to seek protection) the Court should vacate its April 22nd Order that the government cannot accomplish "any deportation procedure different from that previously presented to this Court without prior review of the Court" and should dismiss with prejudice. However, the appropriate remedy for a violation of the conditions of supervised release, if Jama were in the jurisdiction of the United States, would be for the government to seek from this Court an order for detention or some other form of administrative relief, not the vacatur of an order which imposes proper limits on the government's conduct in any subsequent deportation in order to protect Jama from manifest harm while in government custody. The Order of April 22, 2006 arose because

---

[2] The New York Times reported on July 20 that the Islamic militia, which the United States links to Al Qaeda and which have uncontested authority over most of the south of Somalia, are now deployed to seize the town of Baidoa where the interim government supported by the United Nations has been residing, and Ethiopia has said that it is prepared to invade Somalia. The New York Times also reports about the Taliban-like activities of the Islamic group which have seized Mogadishu including killing people for watching soccer games, arresting citizens for watching videos, and cracking down on activities it considers violations of Islam, such as live music at weddings. *New York Times*, July 20, 2006 at www.nytimes.com.

of problems associated with the government's conduct in the treatment of Jama in the removal process, and those problems are obviously not cured by Jama's noncompliance with the reporting obligations of the release.

Nor should this case be dismissed "with prejudice" on the ground that Jama is a "fugitive." The phrase "with prejudice," as used in the context in which an action is dismissed with prejudice, "means an adjudication on merits and final disposition, barring right to bring or maintain an action on same claim or cause." *Black's Law Dictionary*, Sixth Ed. No action should be taken here which would cast any doubt on the validity of this Court's April 22nd Order. There certainly has been no adjudication "on the merits" or adjudication adverse to Jama's position on the validity of that Order.[3] There should be no implication that Jama is barred from seeking the same relief encompassed in the April 22nd Order at a later time if Jama comes back into the custody of ICE and the same government conduct ensues.

[3] For example, the government raised arguments about the Court's authority to issue the April 22 Order, or to otherwise continue to assert any jurisdiction in this habeas action, because of the Real ID Act. See this Court's Order September 7, 2005. Despite this Court's openness to hear the merits of such arguments, they were apparently abandoned by the government after the Eighth Circuit lifted the stay of the release order in July, 2005. There was, of course, no adjudication on the merits of any such claim, which would have been vigorously opposed by Petitioner.

DATED: July 20, 2006

BRIGGS AND MORGAN, P.A.

By: s/Jeffrey J. Keyes
Jeffrey J. Keyes (#55505)
2200 IDS Center
80 South Eighth Street
Minneapolis, MN 55402
(612) 977-8540

**AND**

Michelle Garnett McKenzie
Minnesota Advocates for Human Rights
650 Third Avenue South #550
Minneapolis, MN 55402
(612) 341-3302

***ATTORNEYS FOR PETITIONER***